[No. 1447.]

## STATE OF NEVADA, RESPONDENT, v. ALFRED VAUGHAN, APPELLANT.

CRIMINAL LAW—JUROR EXCUSED AFTER ADMISSION OF EVIDENCE.—After a jury has been sworn, and evidence admitted in a capital case, the court may, in its discretion, excuse a juror against defendant's objection, on proof that he is disqualified, the fact of his disqualification having come to the knowledge of the prosecution during the trial.

IDEM—JURY—JUROR DISCHARGED AFTER EVIDENCE INTRODUCED—ERROR TO RETAIN BALANCE WITHOUT ALLOWING DEFENDANT TO EXAMINE.— When in a capital case a juror, because disqualified, is excused by the court against defendant's objection, after evidence has been admitted, it is error to accept the other jurors without first discharging them and giving the defendant the privilege asked for of re-examining them as to their then state of mind before being re-sworn to try the case with the new juror.

APPEAL from the District Court of the State of Nevada, Lander county; *Charles E. Mack*, District Judge:

Alfred Vaughan was convicted of murder, and appeals. Reversed.

The facts sufficiently appear in the opinion.

*James F. Dennis* and *J. H. MacMillan,* for Appellant:

I.   The statement of the district attorney, in reference to the juror Flint, was contrary to law, as there was an assumption of the guilt of the prisoner while stating a public offense against a juror duly. qualified and sworn to try the issues between the state and prisoner, which should not have been permitted at that time in the trial of so important a case.   (*Grosse* v. *State,* 11 Tex. App. 377–399.)

II.   No challenge of the juror was made, and there was nothing before the court; no issue of law or fact when witnesses were put upon the stand, and the testimony of the witnesses was prejudicial and irrelevant to the issues between the state and appellant.   (*People* v. *Hamilton,* 62 Cal. 383; *People* v. *Reynolds,* 16 Cal. 129.)

III.   Could the court look into the juror's mind and say that it had not changed since the declaration sworn to by witnesses Kassel and Moss?   Was there anything to justify the court, in the presence of a jury it had then decided to retain for the future trial of the accused, in saying that the juror had perjured himself in order, if possible, to acquit the defendant?

IV.   Take the entire proceedings against the juror Flint, his examination, the statement of counsel in reference to him, the testimony of the witnesses against him, and it fails to show any necessity for his discharge from the jury.   He speaks of having had a different state of mind when on his *voir dire,* but says he had got rid of it.   The testimony and proceedings as to his past declaration do not prove or tend to prove that his mind was not, at that time, equally balanced between the state and defendant.   There was not that imperative necessity for his discharge that the law contemplates in such cases.   (Rice on Evidence, vol. 4, sec. 616; *O'Brien* v. *Commonwealth,* 9 Bush. 333; *Pizana* v. *State,* 20 Tex. Ct. App. 139.)

V.   The discharge of juror Flint, against the objection of the defendant, terminated the legal existence of the jury sworn to try the issues between the state and accused, a jury that had heard the opening statement of counsel for the state and the testimony of all the witnesses against the prisoner.

VI.   What becomes of the constitutional guarantee of the

right of trial by jury? Can it be for a moment supposed that eleven men, who heard all the state's testimony, were indifferent or impartial at the beginning of the trial which resulted in the conviction of appellant, or will it be assumed that the instruction of the trial judge purged and rendered the minds of the eleven jurors a blank as to what had transpired on the previous presentation of the state's case. If these eleven jurors attended to their duty on the first presentation of the case, they could not have been impartial at the beginning of the trial. (*Commonwealth* v. *Hussey*, 13 Mass. 221; *People* v. *Allen*, 43 N. Y. 33; *State* v. *McClear*, 11 Nev. 50.)

VII. The trial court refused to allow defendant to examine the eleven old jurors as to their state of mind after the discharge of the juror Flint, or the right to exercise any peremptory challenges to the reconstructed jury or the new part of it.

VIII. The only safe way to prevent an injustice and to secure an impartial jury, such as is guaranteed to us by the constitution of our country, is to discharge the entire twelve men, under the circumstances of this case, and empanel a new jury, allowing to the defendant his statutory right of challenge, peremptory and for cause. (*State* v. *Allen*, 46 Conn. 549.)

*Robt. M. Beatty*, Attorney-General, *W. D. Jones*, District Attorney, and *D. S. Truman*, for Respondent:

I. The court was fully authorized to draw another juror to take Flint's place. (Gen. Stats. 4262; *State* v. *Pritchard*, 16 Nev. 101; *State* v. *Vaughan*, 22 Nev. 285.)

II. The eleven jurors had been passed by both the state and the defendant, and had been sworn. No attempt was made to show that any one of them had been disqualified; the fact that Flint had been shown to be disqualified raised no presumption that any of the other eleven jurors were disqualified. No one had a right to examine any of those eleven jurors at that stage of the trial without showing good cause, and no cause being shown, it was not error to refuse the request. (Crim. Prac. Act, sec. 334; *State* v. *Marks*, 15 Nev. 33; *State* v. *Pritchard*, 16 Nev. 101.)

III. The eleven jurors had been sworn, and this court

long ago, decided in *State* v. *Anderson*, 4 Nev. 65, that: " The allowance of a peremptory challenge to a juror who has been accepted and sworn is not a matter of right and a refusal on the part of the court to allow it is not error." (*People* v. *Reynolds*, 16 Cal. 128; *State* v. *Hasledahl*, 52 N. W. Rep. 315.)

IV. No cause was shown, or attempted to be shown, why any one or all of the eleven jurors should be peremptorily challenged, and unless good cause be shown, says our statute (Sec. 334, Crim. Prac. Act), it is not error to refuse it. (*State* v. *Marks*, 15 Nev. 33; *State* v. *Pritchard*, 16 Nev. 101.)

V. It was unavoidable for the proof as to Flint's disqualification to be made to the court in Flint's presence and in the presence of the other eleven jurors. At that time Flint was as much a part of the jury as any of the other eleven, and there was no jury without him and each and all of the other eleven jurors; they could not legally separate (Sec. 340, Crim. Prac. Act), until the " urgent necessity " arose, was proven, and found by the court. (*State* v. *Pritchard*, 16 Nev. 101.)

By the Court, BELKNAP, J.:

Respondent was convicted of murder of the first degree.

At the trial, after a jury had been empaneled and sworn and the witnesses examined, the district attorney called the attention of the court to the fact that one of the jurors was disqualified and asked leave to present testimony in support of the charge. Upon permission given, witnesses were examined whose testimony tended to show that A. A. Flint, the juror against whom the investigation was directed, had said several months prior that the defendant was guilty; that he had conscientious scruples against capital punishment and would never vote for a conviction of murder of the first degree were he one of the jury. The court excused him, another was substituted, the witnesses were re-examined, a verdict of murder of the first degree returned, and judgment entered thereon. Various exceptions were taken in behalf of the appellant to the rulings of the court in this particular.

First, as to the discharge of juror Flint.

Lord Coke lays down the rule that " a jury sworn and

charged in case of life or member cannot be discharged by the court or any other, but they ought to give a verdict." (1 Inst. 227b.)  Following Coke, Hawkins, in his Pleas of the Crown, 2d vol. 568, says that "no juror can be challenged either by the king or prisoner without consent after he hath been sworn,  *  *  *  unless it be for some cause which happened since he was sworn."

In *Wharton's Case* (Yelverton, 23) one of the jurors that had been accepted and sworn was challenged for a cause that was *in esse* when he was sworn, but unknown at the time to the queen's counsel.  The challenge was denied.

But in the case of the two Kinlocks (Foster, 22) the power of the court to discharge jurors underwent careful examination, and it was decided that the general rule as laid down by Lord Coke had no authority to warrant it and could not be universally binding.  In that case it was determined that the court had power to withdraw a juror at the request of the prisoners for the purpose of imparting to them a defense which they could not otherwise have taken.

The decisions in this country sustain the position that a juror may be excused when his detention upon the jury would defeat the ends of public justice.

In *U. S.* v. *Morris*, 1 Curtis, 23, it was decided that after witnesses had been examined the prosecuting officer could, in the discretion of the court, examine witnesses upon the question of the bias of a juror.

In discussing the subject, after stating the common law rule, Judge Curtis said: "But it by no means follows that it is not in the power of the court, at the suggestion of one of the parties, or upon its own motion, to interpose and withdraw from the panel a juror utterly unfit, in the apprehension of every honest man, to remain there.  Suppose a prisoner on trial for his life should inform the court that a juror had been bribed to convict him—that the fact was unknown to him when the juror was sworn and that he had just obtained plenary evidence of it, which he was ready to lay before the court, is the court compelled to go on with the trial?  Suppose the judge, during the trial, obtains, by accident, personal knowledge that one of the jurors is determined to acquit or convict without any regard to the law or the evi-

dence, is he bound to hold his peace? In my judgment such a doctrine would be as wide of the common law as it would be of common sense and common honesty. The truth is that this rule, like a great many other rules, is for the orderly conduct of business. There must be some prescribed order for the parties to make their challenges, as well as to do almost everything else in the course of a trial. As matter of right, neither party can deviate from this order. And it is the duty of the court to enforce these rules, which are for the general good, even if they occasion inconvenience and loss in particular cases. But there goes along with all of them the great principle that, being designated to promote the ends of justice, they shall not be used utterly to subvert and defeat it; being intended as a fence against disorder, they shall not be turned into a snare; they do not tie the hands of the court, so that when, in the sound discretion of the court, the public justice plainly requires its interposition, it may not interpose; and it would be as inconsistent with authority as with the great interests of the community to hold the court restrained.

"A very eminent English judge has treated this rule concerning challenges just as I believe it should be treated. Chief Justice Abbot says: 'I have no doubt that if, from inadvertence, or any other cause, the prisoner or his counsel should have omitted to make the challenge at the proper moment, the strictness of the rule which confines him to make the challenge before the officer begins to administer the oath, would not be insisted on by the attorney-general, or, if insisted on by him, would not be allowed by the court.' (*The Derby Case*, Joy on Confessions, etc., 220.) That is, like other rules of procedure in trials, it is in the power of the court to dispense with it when justice requires."

In *U. S.* v. *Coolidge*, 2 Gall. 363, Lee, an indispensable witness to the government, refused to be sworn. Judge Story said: "The question is simply this. A party is on trial before a jury, and a circumstance occurs, which will occasion a total failure of justice if the trial proceed; have the court, in such an emergency, power to withdraw a juror? It has been stated from the bar that, in capital cases, the court have not this power; but in a case in Foster's Crown Law,

and in several other cases, it has been held that they have. In misdemeanors, there is certainly a larger discretion, and until the cases just mentioned, capital trials were generally supposed to be excepted. It is now held, that the discretion exists in all cases, but is to be exercised only in very. extraordinary and striking circumstances. Were it otherwise the most unreasonable consequences would follow. Suppose, that in the course of the trial the accused should be reduced to such a situation as to be totally incapable of vindicating himself—shall the trial proceed, and he be condemned? Suppose a juryman taken suddenly ill, and incapable of attending .to the cause; shall the prisoner be acquitted? Suppose that this were a capital case, and that, in the course of the investigation, it had clearly appeared, that on Lee's testimony depended a conviction or an acquittal; would it be reasonable that the cause should proceed? Lee may, perhaps, during the term, be willing to testify. Under these circumstances, I am of opinion that the government is not bound to proceed, but that the case be suspended until the close of the term, that we may see whether the witness will not consent to an examination."

In *State* v. *Allen*, 46 Conn. 531, upon the trial, after witnesses had been examined, the court heard evidence touching the disqualification of a juror, who had before being sworn expressed the opinion that defendant was guilty. The disqualification was proven, the juror excused, and the jury discharged.

In *State* v. *Bell*, 81 N. C. 591, it was held that the duty of courts to guard the administration of justice against fraudulent practices was an exception to the rule that a jury sworn in a capital case cannot be discharged without the prisoner's consent until they have given a verdict. So when a juror. had fraudulently procured himself to be selected for the purpose of acquitting the prisoner the juror was properly excused.

In *People* v. *Ollcott*, 2 Johns. Cases, 301, Justice. Kent stated his conclusions as follows: "I conclude, then, that as no general rule or decision that I have met with exists to the contrary in a case of misdemeanor, and as the rule, even in capital cases, abounds with exceptions, and is even questioned, if not denied, by the most respectable authority, that

of nine of the judges of England, it must from the reason and necessity of the thing belong to the court, on trials for misdemeanors, to discharge the jury whenever the circumstances of the case render such interference essential to the furtherance of justice. It is not for me here to say whether the same power exists in the same degree (for to a certain degree it must inevitably exist) on trials for capital crimes, because such a case is not the one before the court; and I choose to confine my opinion strictly to the facts before me. With respect to misdemeanors, we may, with perfect safety and propriety, adopt the language of Sir M. Foster (p. 29), which he, however, applies even to capital crimes, ' that it is impossible to fix upon any single rule which can be made to govern the infinite variety of cases that may come under the general question touching the power of the court to discharge juries sworn and charged in criminal cases.' If the court are satisfied that the jury have made long and unavailing efforts to agree; that they are so far exhausted as to be incapable of further discussion and deliberation, this becomes a case of necessity, and requires an interference. All the authorities admit that when any juror becomes mentally disabled by sickness or intoxication, it is proper to discharge the jury, and whether the mental inability be produced by sickness, fatigue or incurable prejudice, the application of the principle must be the same. So it is admitted to be proper to discharge the jury when there is good reason to conclude the witnesses are kept away, or the jury tampered with, by means of the parties. Every question of this kind must rest with the court, under all the particular or peculiar circumstances of the case. There is no alternative; either the court must determine when it is requisite to discharge, or the rule must be inflexible that, after the jury are once sworn and charged, no other jury can, in any event, be sworn and charged in the same cause. The moment cases of necessity are admitted to form exceptions, that moment a door is opened to the discretion of the court to judge of that necessity, and to determine what combination of circumstances will create one."

In the inquiry touching the disqualification of the juror three witnesses were examined. Two of them, Kassell and

Moss, swore, among other things, that Flint had said some
months previous, in their presence, that he was opposed to
capital punishment; and Dunham, the third witness, said
that he had often heard Flint say that the defendant was
guilty.

The court excuse  the juror for two reasons:  First, that
he had formed and expressed an opinion that the defendant
was guilty, and, second, that he was opposed to capital pun-
ishment.

For either of these reasons the juror may have been
excused.  The subject was within the sound discretion of the
district court, and we cannot interfere with its exercise except
in cases of its abuse.

Second—Whether it was correct to empanel another juror
in the place of Flint, or to discharge the jury:

In *People* v. *Damon*, 13 Wend. 351, after a juror had been
sworn in chief and taken his seat, it was discovered that
he was incompetent to serve.  He was excused and another
juror substituted.  In the opinion of the court, Chief Justice
Savage said:  "I apprehend no authority can be necessary
to sustain the proposition that the court may and should in
its discretion set aside all the persons who are incompetent
jurors at any time *before evidence is given.*"  The inference to
be drawn from this language is that, after evidence is given,
no substitution should be made.  At the common law, if,
during the trial, an incompetent juror was discovered, the
whole jury was discharged.

The rule has not been changed by the legislation of this
state.  It is as binding upon courts as statutes adopted by
the legislature.

Adhering to it, I conclude that a mistrial took place when
Flint was excused.  The substitution of another juror in his
stead was contrary to all precedent.  The case illustrates the
evil of the course pursued.  The jury had been occupied
for upwards of three days in hearing the testimony on the
part of the prosecution when Flint was excused.  Under
these circumstances it is not presumable that the jury was
indifferent.

Defendant was entitled to a legal and impartial jury, and

all the substantial requirements of law should have been observed in its empanelment.

The judgment should be reversed and a new trial granted, and it is so ordered.

BONNIFIELD, J., concurring:

In view of the character of the charges preferred against juror Flint, and of the examination and proceedings had thereon and in connection therewith, all being made and had in the presence of the jury and against the objection of the defendant, the vital question, in my opinion, in this case is: Was the court vested with legal discretion to retain the eleven jurors on the panel against defendant's objection? Or, in other words, was not fatal error committed in empaneling juror Savage in place of juror Flint, who had been discharged, instead of discharging the eleven jurors and empaneling a new jury?

In the first place, it was not necessary to have preferred said charges, or to have held said examination or proceedings in the presence of said eleven jurors, but I am of opinion that it was improper to have done so. It appears to me that it would have been proper and the right course to have pursued for the court to have put said jurors in charge of the sheriff to be retired from the court room, and the juror Flint retained during the examination of the charges made against him; then it might have reasonably been said that the remaining jurors could not have been prejudiced by anything which had occurred in the matter of the impeachment of Flint; that, therefore, no error was committed to defendant's prejudice thereby, and, upon the authority of the Pritchard case, the action of the court might be sustained, if, at all.

It is provided by statute, and is as binding on the courts as any other statutory provision, that: "The common law of England, so far as it is not repugnant to, or in conflict with the constitution and laws of the United States, or the constitution and laws of this state, shall be the rule of decision in all courts of this state." (General Stats. 3021.) And it seems to be settled by the common law writers and by nearly, if not quite, all of the decided cases on the subject,

that under the common law, in all cases where a juror is discharged during the progress of the trial from any cause of necessity, the balance of the jurors must be discharged, or rather the discharge of the one by the court operates to the discharge of all the balance, but the balance may be immediately recalled into the jury-box and their examination be entered into as originally upon their *voir dire*, if either party so desires, and the respective parties may have their challenges over. By our statute the common law rule is abrogated to this extent and no further, that is: "If before the conclusion of the trial a juror becomes sick, so as to be unable to perform his duty, the court may order him to be discharged. In that case a new juror may be sworn and the trial begun anew, or the jury may be discharged and a new jury then or afterwards empaneled." (General Stats. 4262.)

Only in the class of cases above named does our statute give the court discretion to either empanel a new juror or to discharge the whole jury and empanel a new one at its option. In the case at bar the juror was not discharged on account of sickness, and hence the above statute is not applicable to it, and we have no other statute on the subject, but we have the common law, with its mandate that in such cases the jury shall be discharged. At this point in the procedure we come to the parting of the ways between the common law and the statute. The statute plainly points out the course to be pursued in empaneling a new jury, which, of course, must be followed, unless the parties consent to proceed under the common law rule of immediately calling the remaining jurors back into the box for re-examination and challenges; so, if there be any authority for retaining the eleven jurors, as was done in this case, we must look elsewhere for it besides the statute or the common law.

No judicial authority has been cited in point, and in my opinion none can be found to sustain the respondent's contention on the question under consideration, except in those states where the statute authorizes such practice as was adopted by the trial court in this case. *State* v. *Pritchard*, 16 Nev. 101, and *People* v. *Stone*, 2 Scam. (Ills.) 326, have been cited and seem to be relied on as to such authority. But I am of opinion that they cannot be properly so con-

sidered. In the Pritchard case, upon the question whether the court below erred in empaneling another juror in the place of the juror who had been discharged, instead of discharging the remaining eleven jurors and empaneling a new jury, the supreme court said: "In considering the facts of this case, in connection with the authorities to which our attention has been called, we have arrived at the conclusion that this action of the court was correct. The remaining eleven jurors were competent. No objection was urged against them. They had been selected, agreed upon and accepted in the mode provided by law. No testimony had been offered. It seems to us that the discharge of an incompetent juror creates no necessity for the discharge of the eleven remaining competent jurors."

Now, the facts in that case were these: The jury were empaneled and sworn to try the case; thereupon the court took a recess till next morning. Upon the reconvening of the court counsel for the defendant was permitted by the court to ask the jurors the following questions, to wit: "Since you were examined by me before, touching your qualifications to serve as jurors, has anything happened or occurred to your recollections to render you improper jurors to your knowledge?" Thereupon one of the jurors informed the court and counsel, in substance, that there had been some misapprehension or some mistake made in his examination as to his qualifications as a juror, and stated that he could not find a verdict of guilty on a charge of murder upon circumstantial evidence. Upon this statement and ground he was discharged. It is apparent that in that proceeding nothing occurred so that it could reasonably be said that it might have prejudiced the balance of the jurors against the defendant. Indeed, it was admitted on the record by stipulation of the parties and confirmed by the court: "That neither the plaintiff, the defendant nor said juror had been guilty of any intentional fraud or deception in procuring the swearing of said juror to try the case, except in so far as the answers made by said juror on his *voir dire* may operate as such fraud."

But in the present case the record shows a materially different state of facts. Here the juror was charged, in effect,

with deception, fraud and the crime of perjury, with the view, on his part, of getting on the jury to favor and acquit the defendant, and the court found, in effect, that the charge was true. Here, also, by the strongest implication, the defendant and his family were charged with being accomplices in the crime of said juror, and this imputation was left resting on them by the district attorney and the court, instead of exonerating them therefrom.

During the progress of the examination of witnesses in support of these charges, the district attorney put defendant's attorney on the stand as a witness, evidently for no other purpose than to connect the defense with the alleged fraud and perfidy of said juror. He was subjected to quite a lengthy examination, and all the questions put to him by the district attorney appear to have been put with said view. The witness having stated that he had received an intimation the evening before that there was one juror on the panel favorable to the defendant, juror Flint asked him from whom he had received this intimation; the witness declined to answer, " on the ground that it was privileged." The district attorney then said to, and asked, the witness as follows: " Let us find out whether it is so or not: Was it from your client, his father, or brother, or mother?" The witness declined to answer. The court, in passing upon the question of discharging Flint, expressed the opinion that the juror had deceived both of the counsel and the court. This relieved defendant's attorney from all blame in the matter, so far as the opinion of the court was concerned, but it did not remove the imputation cast upon the defendant and his family of complicity.

After Flint had been discharged, and in explanation of the grounds of his discharge, the court remarked in the presence of the eleven jurors, to wit: * * * " I became convinced that he came upon the jury to aid and assist the defendant in this case, for what inducement I do not know." The remaining jurors might reasonably have inferred from that remark that, in the opinion of the court, the juror had inducement, and that such inducement moved from the defendant or from some one in his behalf.

Counsel for defendant asked that the remaining eleven

jurors be discharged on the ground, among others, " of the evidence adduced before them, tending to disqualify them, and tending to bias and prejudice them against the defendant," and he asked " to be allowed to examine them on their *voir dire* as to their qualifications," and asked to be allowed a peremptory challenge to the new juror Savage. The court replied: " If I thought your challenge was taken in good faith I should be induced to set aside them all."

By counsel—" I assure your honor it is in good faith."

By the court—" I will pass upon that; the law gives you eight; I am impressed with the fact that you simply desire to obtain from the court that [which] is erroneous. The challenge is not taken in good faith, and it will be denied. You may have the benefit of an exception."

By counsel—" I will take it."

It seems to me that the above remarks impeaching the sincerity of counsel cast discredit on the whole defense of the defendant, and would have a tendency to create fatal prejudice in the minds of said jurors against the defendant.

The charges having been made and the examination thereof had before the jury against the defendant's objection, and the above remarks made in their presence, can it be reasonably said that the eleven jurors were not thereby prejudiced against the defendant and the theory of the defense, and hence remained competent jurors? Under these facts and circumstances was the court clothed with a discretion to retain said eleven jurors on the panel against the objection of the defendant, and without giving him the privilege asked for of examining them as to the state of their minds? Certainly the ruling in the Pritchard case does not go so far as to sanction such practice or authorize such discretion as were adopted and exercised in this case under the state of facts existing here, nor was it intended by the court that the rule adopted in that case should have such effect as is clearly manifested by the language used in the above quotation from the opinion of the court. It is equally clear to my mind that the case of *People* v. *Stone, supra,* does not support the action of the court in the present case. In that case a juror was discharged on the ground of alienage, and a new juror empaneled, and like the Pritchard case there was noth-

ing occurring in the proceedings relative to the juror discharged that could reasonably have tended to prejudice the remaining jurors against the defendant or his defense, so far as we can learn from the opinion there rendered. The court held in that case, as in the Pritchard case, that the discharge of the one juror did not necessitate the discharge of the eleven, for the reason that no injustice had been done, that the rights of the prisoner had not been infringed, and no law violated. The court then says: "If a doubt could, however, remain on this point," that is, on the point of empaneling a new juror, instead of a new jury, "it is definitely and conclusively settled by the statute relative to jurors." So it seems that the decision was finally based on the statutes of Illinois, which give the courts discretion to fill one or more vacancies on the jury, where one or more jurors are discharged from necessity, and to retain the other jurors on the panel. But we have no such statute.

It seems to me further, that if, from what the court said in that case can be construed as basing the decision "on general principles," and not solely on the statute, it was done so on the ground of the peculiar facts of that case, and is not authority in any other case containing materially different facts. The court said: "The case is *sui generis.* * * * We have been referred to authorities which are admitted to be the rule in the British courts, and if the facts in this case were of the nature which marked the cases that have been decided there, and in like cases in our own courts, we should have no difficulty in coming to the same results on the present occasion."

Can it be said no injustice was done in the present case, no law violated, no rights infringed, and that the eleven jurors were not prejudiced on account of these proceedings had in their presence on matters outside of the proper investigation of the charges contained in the indictment? I am of opinion that we are not warranted in entertaining such presumption.

Can it be held with any reasonable plausibility that the action of the court, in the matters under consideration, should be sustained because it is not shown here that these proceedings prejudiced the eleven jurors against the defense when the only means by which defendant might or could

have shown it was denied him in the court below? This question is susceptible of but one answer, and that in the negative. It is clear to my mind that to so hold would be denying the accused in such cases the right to protect himself against such prejudice, however great in degree it might be, created by such procedure.

It seems to me that it cannot reasonably be presumed that these charges against the defendant, and the proceedings had, and imputations made of complicity of the defendant and his family in procuring Flint to be placed on the jury through his alleged deception, fraud and perjury, did not prejudice the eleven jurors against the defendant and the theory of his defense, so as to render them incompetent.

I am of opinion that nothing scarcely is more potent to create such prejudice against a party than arousing suspicion that such party has packed, or attempted to pack, a jury by which he is to be tried, and that but few men are capable of resisting such prejudice and to rise above its influence, in their deliberations as jurors.

Further, it is evident, to my mind, that to affirm the judgment of the trial court, in consideration of the facts developed in this case, would be establishing a rule in this state without law and without precedent, and which would operate, in many cases, in the practical denial of the right of trial by jury—such trial as is contemplated by the statute, the common law and the constitution. It seems to me that such rule would be unwarrantable judicial legislation, instead of proper adjudication.

In what has been said above, it is not intended as a criticism of any matters occuring on the impeachment of said juror Flint, or on the trial thereof, or of any remarks made by the court in connection therewith, except in so far as the same occurred in the presence of the eleven jurors.

In consideration of the facts above given, I am of opinion that the court was not clothed with legal discretion to retain said eleven jurors on the panel without the consent of the defendant, and against his objection, and without giving him the privilege asked for of examining the said jurors as to the state of their minds before being sworn to try the case with the new juror. Upon this ground, and for the reasons here-

inabove given, I concur in reversing the judgment and granting a new trial.

BIGELOW, C. J., concurring:

I am of the opinion that the discharge of the juror Flint was a matter in the discretion of the court. He had sworn, upon *voir dire*, that he had not formed or expressed any opinion as to the defendant's guilt or innocence, and that he had no conscientious scruples against the infliction of capital punishment. But upon the examination held after the district attorney moved to dismiss him from the panel it appeared quite clearly that he had several times expressed the opinion that defendant was guilty, but that, if he were on the jury, he would not vote to hang him, and when pressed for a reason why he would not had said that he was opposed to capital punishment. It may be that these remarks were simply idle talk, and had been forgotten by the juror, but if such were not the case, and especially if he did have such conscientious scruples, then certainly he was not a fit juror.

The trial judge was in a better position to determine this fact than we are, and his conclusion thereon is not unsupported by the evidence. It follows, the same as in any other case where a point has to be determined upon conflicting evidence, that the discretion of the trial court cannot be overruled upon appeal. As the juror was properly discharged, the evidence was insufficient to support the plea of former jeopardy thereafter entered by defendant.

I am also of the opinion that while perhaps the court did not commit reversible error in refusing to discharge the entire jury, it should either have done so or have given the defendant his challenges over again, as demanded by him. This would have been substantially in accordance with the rule at common law, which, in the absence of a statute, must be our guide.

*State* v. *Pritchard*, 16 Nev. 101, relied upon as justifying the action taken below, does not cover these questions, because there no testimony had been taken, which is particularly referred to as one of the grounds upon which the decision is placed, and because no question was raised concerning the defendant's renewed right to his challenges, which were

always·given him at common law. If that rule is unsatisfactory, and doubtless it can be improved upon, it should be changed by statute, as has been done in many states.

I also agree with much that is said by Justice BONNIFIELD concerning the proceedings taken against juror Flint, and which could not well have failed to have a prejudicial effect upon the minds of the jurors retained in the case.

For these reasons I concur in the judgment.