RAYMOND WEST, PLAINTIFF IN ERROR, VS. THE STATE
    OF FLORIDA, DEFENDANT IN ERROR.

Criminal Law—Sickness of Juror After Being Sworn—Challenges
    —Mistrial—Commission of Another Crime, When Admissable
    in Evidence.

1.  In a trial for felony, if a juror, the judge, or the prisoner be-
    comes incapacitated by illness or death, *after the jury is empan-
    elled and sworn in chief*, the proper course to pursue is to de-
    clare a mistrial and begin *de novo*. In the case of a juror falling
    ill after the jury has been empanelled and sworn in chief, there
    is no impropriety in utilizing the remaining eleven on a new
    trial, but they should be retendered to the prisoner and re-
    sworn, and the defendant has the right to peremptorily chal-
    lenge any of them on such retender,. and has the right to his
    full complement of peremptory challenges just as though there
    had been no prior empanelment of a jury in his cause.
2.  Evidence of the commission of another crime by the defendant
    contemporaneously with the one for which he is on trial is ad-
    missible when it tends to prove the animus of the defendant in
    the    commission    of   the   crime   for   which   he is   on   trial.

Writ of Error to the Circuit Court for Jackson
County.

The facts in the case are stated in the opinion of
the court.

*Wm. B. Farley and J. C. McKinnon*, for Plaintiff in
Error.

*The Attorney-General*, for Defendant in Error.

TAYLOR, C. J. :
    The plaintiff in error, defendant below, was indict-
ed at the Fall term, 1898, of the Circuit Court for Jack-
son county for murder, was tried at the Spring term,

1899, of said court and convicted of murder in the first degree, recommended to mercy, and sentenced to life imprisonment, and took writ of error.

The indictment is as follows: "The grand jurors of the State of Florida, inquiring in and for the body of the county of Jackson, upon their oaths do present that one Raymond West, late of the county of Jackson aforesaid, in the Circuit and State aforesaid, on the sixth day of November, in the year of our Lord, one thousand eight hundred and ninety-eight, with force and arms at and in the county of Jackson aforesaid, then and there being, did then and there without authority of law, of his malice aforethought, and from a premeditated design to effect the death of a human being, to-wit: one Sol Dozier, an assault did make in and upon the said Sol Dozier with a certain deadly weapon, to-wit: a gun, then and there charged with gunpowder and certain leaden balls, which said gun charged and loaded as aforesaid he the said Raymond West then and there in his hand had and held at and against the said Sol Dozier, then and there without authority of law, of his malice aforethought and from a premeditated design to effect the death of the said Sol Dozier, did shoot off and discharge; and that the said Raymond West with the leaden balls aforesaid, by means of shooting off and discharging said gun so loaded, at, towards and against the said Sol Dozier, did then and there without authority of law, of his malice aforethought and from a premeditated design to effect the death of the said Sol Dozier, strike, penetrate and wound the said Sol Dozier in and upon the belly near the navel, and also in and upon the right arm of him the said Sol Dozier then and there, without authority of law, of his malice aforethought, and from a premeditated design to effect the death of the said Sol

Dozier, giving to the said Sol Dozier then and there with the leaden balls aforesaid, so as aforesaid shot and discharged out of the gun aforesaid, by the said Raymond West in and upon the body near the navel of him the said Sol Dozier, one mortal wound, and also in and upon the right arm of him the said Sol Dozier one mortal wound, of which aforesaid mortal wounds the said Sol Dozier then and there instantly died; and the grand jurors aforesaid, on their oaths aforesaid, do say that him the said Raymond West, in the manner and by the means aforesaid then and there wilfully, without authority of law, of his malice aforethought and from a premeditated design to effect the death of him the said Sol Dozier, then and there did kill and murder the said Sol Dozier, against the form of the statute," etc.

The defendant before arraignment moved to quash this indictment upon the ground that it is vague, indefinite and uncertain, and does not charge the commission of the homicidal act to have been with malice aforethought and from premeditated design to effect death. This motion was overruled and such ruling is assigned as error. Under this assignment the point urged here against the indictment is that it fails to allege that the infliction of the mortal wound was "with a premeditated design to effect death." This contention is without merit. The indictment after alleging an assault by the defendant upon the deceased with a loaded gun, from a premeditated design to effect the death of the deceased, then alleges that the shooting and discharge of the gun at and against the deceased was done with such design, and then alleges "that the said Raymond West with the leaden balls aforesaid, by means of shooting off and discharging said gun so loaded at, towards and against the said Sol Dozier, did then and there without authority of

law, of his malice aforethought and from a premeditated design to effect the death of the said Sol Dozier, strike, penetrate and wound the said Sol Dozier in and upon the belly near the navel, and also in and upon the right arm of him the said Sol Dozier, then and there without authority of law, of his malice aforethought and from a premeditated design to effect the death of the said Sol Dozier, giving to the said Sol Dozier, then and there with the leaden balls aforesaid, so as aforesaid shot and discharged out of the gun aforesaid, by the said Raymond West in and upon the body near the navel of him the said Sol Dozier, one mortal wound, and also in and upon the right arm of him the said Sol Dozier one mortal wound, of which mortal wounds the said Sol Dozier then and there instantly died," etc.   The allegation of "premeditated design to effect death" could not have been further utilized in this indictment without subjecting it to the criticism of unnecessary repetition and tautology.

After a full panel of twelve jurors had been selected and sworn in chief in the cause, but before any evidence was introduced, one of such jurors, J. D. Hartsfield, became ill and was excused by the court with the consent of the State Attorney, the defendant making no objection, and the court directed the place of the excused juror to be filled from special veniremen. In the selection of this twelfth juror the defendant exhausted the three peremptory challenges that remained to him after the selection of the first twelve jurors chosen, when, after such exhaustion, a venireman, one John Nichols, was called and tendered by the State, the defendant challenged him peremptorily, claiming that he was entitled to the full number of ten peremptory challenges in the selection of such new jury, but the judge refused to al-

low such challenge on the ground that the defendant had exhausted all of the peremptory challenges to which he was entitled. To this ruling exception was taken and it is assigned as error. The said John Nichols sat upon the jury and acted as its foreman. Upon this ruling the defendant has five assignments of error, numbered 2nd, 3rd, 4th, 5th and 6th, as follows: 2nd. The court erred in excusing the juror J. D. Hartsfield after he had been sworn.

3rd. The court erred in not granting the defendant ten new challenges in the selection of another juror after the court had excused the juror Hartsfield.

4th. The court erred in not granting the defendant ten new challenges in the selection of another juror in the place of the excused (J. D. Hartsfield) by the court, and after the defendant's ten original challenges had been exhausted.

5th. The court erred in not allowing the peremptory challenge of defendant to the juror John Nichols.

6th. The court erred in permitting the juror John Nichols to sit and try the defendant for murder after the defendant had objected to him.

As to the excusing of the juror after he had been sworn upon his falling ill, we might decline to consider this assignment because no objection or exception was taken to it at the time, but the rule is well-settled that upon a juror becoming incapacitated by illness from continuing his service as such, the court has a right to excuse him, and to declare a mistrial, should such event occur after the jury is sworn in chief. See authorities *post*.

The pith of the third, fourth, fifth and sixth assignments is that the court upon excusing the sick juror from the completed and sworn panel of twelve, erred in

refusing to allow to the defendant his full complement of ten peremptory challenges in the selection of the one juror to fill the vacancy, in addition to the seven challenges that the defendant had exhausted in the selection of the original panel sworn. These assignments are well taken. The common law rule is that in a trial for felony if a juror, the judge, or the prisoner, become incapacitated by illness or death, *after the jury is empanelled and sworn in chief*, the proper course to pursue is to declare a mistrial and begin *de novo*. In the case of a juror falling ill after being sworn in chief, there is no impropriety in utilizing the remaining eleven on the new trial, but they should be re-tendered to the prisoner and re-sworn, and the defendant has a right to his full complement of peremptory challenges just as though there had been no prior empanelment of a jury in his cause; and he has the right to peremptorily challenge any of the eleven first chosen upon their re-tender to him. Some of the American courts hold that in such cases the discharge of one juror after being sworn, but before any evidence is introduced, does not necessitate the discharge of the remaining eleven, nor the beginning of the trial *de novo*; but such holdings are planted upon special statutory enactments, and have not the force of authoritative precedent in a State like ours that has no such statutory provision, and where, in the absence of a statute on the subject, the common law prevails. Rex v. Edwards, Russ. & Ry. Cr. Cas. 224, S. C. 3 Camp. N. P. 207, S. C. 4 Taunt. 309, S. C. 13 Rev. Rep. 601; Kinloch's Case, Foster's Cr. L. 16; Wedderbourn's Case, Ibid. 22; Miurhead v. Evans, 6 Welsby, H. & G. Exch. Rep. 447; Thompson & Merriam on Juries, § 273 and citations; Garner v. State, 13 Tenn (5 Yerg.) 159; State v. Curtis, 24 Tenn. (5 Humph.) 600; Common-

wealth v. Knapp, 10 Pick. 477, S. C. 20 Am. Dec. 534; Jackson v. State, 51 Ga. 402; State v. Vaughn, 23 Nev. 103, 43 Pac. Rep. 193; Sterling v. State, 15 Tex. App. 249; Ellison v. State, 12 Tex. App. 557; State v. Scruggs, 115 N. C. 805, 20 S. E. Rep. 720; State v. McKee, 1 Bailey's Law (S. C.) 651, S. C. 21 Am. Dec. 499; Commonwealth v. McCormick, 130 Mass. 61, S. C. 39 Am. Rep. 423; Grable v. State, 2 G. Greene (Iowa), 559; McFadden v. Commonwealth, 23 Pa. St. 12, S. C. 62 Am. Dec. 308; Commonwealth v. Fells, 9 Leigh (Va.) 613; United States v. Haskell, 4 Wash. C. C. 402; 1 Bishop's New Cr. L. § 1014; Keech v. State, 15 Fla. 591. *Contra,* on statute, Stone v. People, 2 Scam. (Ill.) 326.

Various witnesses were permitted, over objection by the defendant, to testify to the killing by the defendant of another party, one Howard Sampson, immediately before the shooting by him of the deceased in this case, and this ruling is assigned as error. The objection urged against this evidence is that the defendant was not on trial for the killing of such third party. Under the facts in this case this evidence was properly admitted. The facts in the case tended to prove that robbery was the motive for the killing of Sol Dozier who was a guest at the house of Howard Sampson; that a fair had been held at such house on the night of the homicide, and that defendant was present during such fair, and at its close, and witnessed the counting of the money taken in thereat; that he went off for a few minutes, returned with a gun and wearing a disguise and meeting Howard Sampson just outside of the house shot and killed him, and then immediately entered the house and shot the deceased, leaving none remaining except some females from whom he took the proceeds of the fair. The testi-

mony objected to tended to show that his purpose was to kill all the men present who could offer resistance to his intended robbery, and was properly admitted. Killins v. State, 28 Fla. 313, 9 South. Rep. 711.

Some of the court's charges are assigned as error. In view of the reversal of the judgment, it becomes unnecessary for us to consider them, inasmuch as upon a new trial the judge below can rectify any errors or omissions therein, if any; and, besides, the evidence on such new trial may be so different as to necessitate the entire reframing of the court's charge.

For the error found, the judgment of the Circuit Court is reversed and a new trial ordered.