MARTIN v. STATE.

Opinion delivered March 3, 1924.

1. INTOXICATING LIQUORS—EVIDENCE.—In a prosecution for possessing a still and stillworm, evidence *held* sufficient to sustain conviction.

2. CRIMINAL LAW—INSTRUCTION AS TO REASONABLE DOUBT.—Where the jury were told to acquit the defendant unless they were convinced of his guilt beyond a reasonable doubt, it was not error

to refuse to charge that, if the facts were susceptible of two reasonable interpretations, one of innocence and one of guilt, the interpretation of innocence should be accepted.

3. CRIMINAL LAW—REASONABLE DOUBT.—It is not necessary to prove each circumstance tending to show guilt beyond a reasonable doubt; the test being whether, on the whole case, after all the evidence has been considered by the jury, they still entertain a reasonable doubt of the defendant's guilt, in which case they should acquit.

4. CRIMINAL LAW—FORMER JEOPARDY.—Discharge of a juror over accused's objection, after the jury had been selected and sworn, upon discovery that the juror had served in a former trial of the same case, which had resulted in a mistrial through the failure of the jury to agree, *held* not to constitute former jeopardy, which would prevent the court from swearing in a substituted juror in the same panel, the action of the court being necessary for the administration of justice.

5. CRIMINAL LAW—DISCHARGE OF JUROR—FORMER JEOPARDY.— Though generally the discharge of a juror after the jury is impaneled and sworn, without consent of the accused, operates as an acquittal, the courts have power to protect public justice from imposition by thereafter discharging a juror or the jury when necessary.

Appeal from Hempstead Circuit Court; *James H. McCollum*, Judge; affirmed.

No brief for appellant.

*J. S. Utley*, Attorney General, *Jno. L. Carter, Wm. T. Hammock, Darden Moose* and *J. S. Abercrombie*, Assistants, for appellee.

SMITH, J. Appellant was indicted for possessing a still and stillworm, and, upon his trial, was convicted, and has appealed.

He assigns as error the alleged insufficiency of the testimony to support the verdict. The testimony fully supports the summary of the evidence contained in the brief of the Attorney General, as follows: A stillworm and other parts of a still were found, covered in some hay in a crib, on the farm where appellant and his father lived. There was also found in the crib about twenty gallons of whiskey, which appellant admitted belonged to him, and for which he testified that he had paid $100. He was a farmer boy—a young man—assisting his father

in making a small crop,. and he does not explain how he
obtained the money to buy this amount of whiskey, which
he said he bought to drink.    Near appellant's home there
was found a still with several barrels of mash ready to
be distilled into whiskey, and there was a path leading
from the crib where the whiskey was found to the still.

Defendant testified that he hid the whiskey because
his father would not allow him to keep whiskey in his
possession.    He admitted that, a short time prior to the
finding of the still, he had been arrested, on his way to
the city of Hope, with six gallons of whiskey, which he
admitted he had intended to sell, but did not sell because
of his arrest, and he also admitted that, prior to that time,
he had been arrested with several gallons of whiskey in
his possession, which he had intended to sell, but had not
sold, and he denied that he had ever at any time sold
whiskey or that he had any knowledge of the presence of
the still or the mash.    There are certain other circum-
stances tending to corroborate and to contradict the testi-.
mony set out above, but we think the testimony recited
is sufficient to sustain the conviction.

The court refused to give, at appellant's request, an
instruction numbered A, which, if given, would have told
the jury that, if the facts testified to by the witnesses
"are susceptible of two reasonable interpretations, one
of innocence and one of guilt, the interpretation of inno-
cence must be accepted in defendant's behalf, and you
are to acquit."    The refusal to give this instruction is
assigned as error.

We think no error was committed in refusing to give
this instruction.    The jury was told to acquit the defend-
ant unless they were convinced of his guilt beyond a
reasonable doubt, and this was sufficient.

The jury is not required to enter into metaphysical
speculations as to the probative value of the separate
facts offered in evidence, nor are they required to con-
sider the relative bearing of any fact offered in evidence
apart from the other testimony in the case.    Nor is it
required that each circumstance tending to establish the

guilt of the accused shall be established beyond a reasonable doubt before taking the part of it so established into account in making up the verdict.

In the case of *Lackey* v. *State,* 67 Ark. 426, it was said: "The doctrine of reasonable doubt applies to the general issue of guilty or not guilty; but it does not apply to each item of testimony or to each circumstance tending to show the guilt of the defendant. It would in many cases be difficult to convict the guilty if the law forbade the jury to consider any circumstance or statement of fact not established beyond a reasonable doubt. Such a rule would be difficult of application, would embarrass the prosecution of criminals, and tend to confuse and mislead the jury. We did not intend to establish such a rule in *Gill* v. *State,* 59 Ark. 422, for the question was not, in that case, before us for decision. The test question, under our statute, is whether, on the whole case, after all the evidence has been considered by the jury, they still entertain a reasonable doubt of the defendant's guilt. If they do, he should be acquitted. Sand. & H. Dig., § 2233. And this seems to be the rule generally approved by the courts of other states. (Citing cases)." See also, *Sullivan* v. *State, ante* p. 11, and cases there cited.

A more serious question, and the only one which gives us concern, is the action of the court in excusing a juror named Middlebrook after the jury had been selected and sworn to try the case. It appears that, after this had been done, the prosecuting attorney discovered that the juror had served as such in a former trial of the case, which had resulted in a mistrial through the failure of the jury to agree.

The record before us contains the following recitals: "Mr. Bush (the prosecuting attorney): If the court please, we would like to excuse Mr. Middlebrook. He has been sworn, but he has evidently overlooked the fact in his statement to the court that he was a juror in the previous case. Evidently he has an opinion, must have had, one way or the other, to sit on the jury, and if it takes it, we would like for the court to declare this a

mistrial, and summon the jury over.  The court: I won't do that.  Mr. Middlebrook, you remember that you were on the trial of this case before, and had overlooked it in answering questions here?  Mr. Middlebrook:  Yes sir.  The court:  I will permit the State to challenge him.  Mr. Carrigan (attorney for defendant):  The defendant objects to that, and saves exceptions on the ground that the jury has already been sworn and impaneled to try the case, and asks that his exceptions be noted of record.''

The court overruled the objection of defendant, and, after another juror had been qualified and sworn, the trial proceeded, and defendant was convicted, as has been said.

In *Martin* v. *State,* 161 Ark. 423, the jury had been sworn and the prosecuting attorney was engaged in making his opening statement, whereupon a juror stated that he had been a member of the grand jury which had returned the indictment.  The court gave appellant an opportunity to challenge the juror, which he declined to do, whereupon the court discharged the entire jury and ordered that another jury be impaneled.  The defendant excepted and entered a plea of former jeopardy.

We overruled the plea, and did so upon the express ground of public necessity, saying that a necessity had arisen in the administration of justice which demanded action on the part of the court, and that it was the duty of the court to safeguard the right of the accused to a trial by an impartial jury and also to protect the rights of the public to test the guilt or innocence of one charged with crime, and we expressly based the decision that jeopardy had not attached upon the holding in the case of *Franklin* v. *State.* 149 Ark. 546, that the necessity of a case might require the discharge of a juror, or, as was there done, the entire jury, to secure a trial fair alike to the State and to the defendant.  No other reason for so holding was given in the Martin case.

In the Franklin case the facts were that, after the jury had been sworn, a juror announced that he had been

a member of a jury which had convicted three other defendants upon their joint trial for the same offense of which the accused was on trial. The court, without objection on the part of the accused, excused the juror, and ordered that another juror be selected to take his place. The defendant then interposed a plea of former jeopardy, which the court overruled.

In upholding the trial court we there said that, as this was obviously done in the defendant's interest, it would be presumed that he had consented to the action taken, inasmuch as he made no objection to the court's action until after the juror had been discharged.

It is true that ruling would have disposed of the exception, but we did not content ourselves with putting the decision on that ground alone. The action of the trial court was upheld on a second ground. We said there was a manifest necessity which warranted the court in discharging the juror, and that therefore no jeopardy attached to the accused.

As authority for that holding we cited and quoted with approval from the decision of the Supreme Court of the United States in the case of *Thompson* v. *United States,* 155 U. S. 271, which, by the way, came from the District Court of the United States for the Western District of Arkansas (in which case a juror discovered, after the jury had been sworn, that he had been a member of the grand jury which had returned the indictment, and the court had discharged the entire jury and had ordered that another jury be called): " 'As to the question raised by the plea of former jeopardy, it is sufficiently answered by citing *United States* v. *Perez,* 9 Wheat. 579; *Simmons* v. *United States,* 142 U. S. 148, and *Logan* v. *United States,* 144 U. S. 263. Those cases clearly establish the law of this court, that courts of justice are invested with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another

jury; and that the defendant is not thereby twice put in jeopardy within the meaning of the Fifth Amendment to the Constitution of the United States.' "

In the Franklin case we also quoted with approval from the Supreme Court of Maine in the case of *State* v. *Slorah,* 4 A. L. R. 1256, 106 Atl. 768, the following statement of the law: " 'The administration of justice requires that verdicts, criminal as well as civil, shall be found by impartial juries, and shall be the result of honest deliberations absolutely free from prejudice or bias. The public as well as the accused have rights which must be safeguarded. If, during the progress of a trial, it shall become known to the court that some of the jury do not stand indifferent, whether toward the State or the accused, it would be a travesty on the administration of justice if the trial must proceed, and, if acquitted by such a tribunal, the constitutional safeguard may be invoked against again placing him in jeopardy before an impartial jury. Such a trial obviously should not constitute jeopardy, whether the jury be prejudiced or influenced in behalf of the accused or the State. To prevent such a perversion of justice, it is now well recognized that, if it comes to the knowledge of the presiding justice that such conditions exist, it creates that imperious, manifest necessity that will warrant a discharge of the jury, and such discharge will constitute no bar to another trial on the same indictment.' " The court cited many authorities, which it reviewed and considered. The provision of the Constitution of the State of Maine is identical with that of our own Constitution of 1836, 1861 and 1864 on the subject.

The question was so thoroughly considered by the Supreme Court of Maine that it is a work of supererogation to consider it further, but, in addition to the cases there cited, the following may also be cited; *Jefferson* v. *State,* 52 Miss. 767; *State* v. *Cason,* 41 S. C. 531, 19 S. E. 918; *State* v. *Stephens,* 11 S. C. 319; *State* v. *Hill,* 46 La. Ann. 736, 15 So. 145; *Yarborough* v. *State,* 105 Ala. 43, 16 So. 758; *Webb* v. *State,* 100 Ala. 45, 14 So. 865; *Haines* v.

*State,* 88 Ala. 37, 7 So. 302; *State* v. *Upton,* 170 N. C. 769, 87 S. E. 328; *State* v. *Pritchard,* 16 Nev. 101; *People* v. *Brady,* 72 Cal. 490, 14 Pac. 202; *Mabry* v. *State,* 71 Miss. 716, 14 So. 207; *Gilham* v. *Brown,* 43 Miss. 641; *McGuire* v. *State,* 37 Miss. 369; *Marsh* v. *State,* 30 Miss. 627; *Lewis* v. *State,* 9 Smead & M. (Miss.) 115; *Stewart* v. *State,* 15 Oh. St. 155; *State* v. *Williams,* 49 W. Va. 220, 38 S. E. 495; *State* v. *Vaughan,* 23 Nev. 103, 43 Pac. 193; *State* v. *Carter,* 5 Humph. (Tenn.) 601; *State* v. *Davis,* 31 W. Va. 390, 7 S. E. 24.

We will not review all these cases, but the case of *State of Nevada* v. *Pritchard,* 16 Nev. 101, is a case in which the question is thoroughly considered. There the fact was discovered, in a case in which the prosecution was asking the imposition of the death penalty, after the jury had been sworn, that a juror had such conscientious scruples against capital punishment that he could not return a verdict where the penalty was death. The juror was excused, and the defendant pleaded former jeopardy. The court held against this plea, and, in doing so, said: "All the authorities agree 'that where the jury has been discharged upon necessity, the prisoner may again be put upon trial.' (*State* v. *Nelson,* 26 Ind. 368). But what shall be considered as constituting such a necessity as to justify courts in exercising this power is not so well settled. The power is one, as before stated, of judicial discretion to be exercised soundly, not arbitrarily, according to the peculiar facts and circumstances of each particular case. The most common of the class denominated as physical necessities that have been held to justify the courts in discharging a jury, although it has been sworn, is where the presiding judge becomes so ill as to be unable to proceed with the trial (*Nugent* v. *State,* 4 Stew. & P. 72); or where a juror is prevented by sickness from attending court during the trial. (Citing cases). There is another class of cases where the courts have been justified in discharging a jury upon what is termed *the necessity of doing justice,* which arises from the duty of the court to prevent the obstruction of

justice by guarding its administration against all fraudulent practices, such as tampering with the jurors after they are sworn (Foster's Crown Law, 27; *State* v. *Wiseman*, 68 N. C. 203); or the fraudulent introduction into the panel of a perjured juror, who, at the instance of the defendant, has procured himself to be selected on the jury for the purpose of acquitting the prisoner (*State* v. *Bell*, 81 N. C. 591). From an examination of the numerous authorities, bearing more or less upon this subject, we think it may safely be announced, as a general rule, that courts are legally authorized to discharge a juror or a jury, after the jury has been sworn to try the case, whenever, from any cause, such a necessity exists as to make it apparent that the ends of justice would otherwise be defeated."

In this connection it may be pointed out that the provision of our Constitution in regard to twice putting one accused in jeopardy for the same offense is substantially the same as the provision of the Federal Constitution on that subject, which appears as a part of the Fifth Amendment to the Constitution, and reads as follows: "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Provisions affording this protection are found in the Constitutions of all of the States.

It is obvious also that the framers of our Constitution substantially copied the provision of the Federal Constitution on this subject; and it may also be pointed out that the decision of the Supreme Court of the United States in the case of *United States* v. *Perez,* 9 Wheat. 579 (cited in the quotation appearing in the Franklin case, *supra*) was rendered on March 17, 1824, which was, of course, before the adoption of our present Constitution, or even our first Constitution of 1836, and the doctrine of that case has been consistently adhered to by the Supreme Court of the United States in numerous subsequent cases.

It was the evident purpose of the provisions of both the Constitution of this State and of the United States

to protect an accused person from being prosecuted more than once for the same offense, and the Supreme Court of the United States has held, as appears from the decisions of that court cited above, that the provision of the Federal Constitution is not violated when a jury which has been sworn to try a case is discharged before rendering a verdict, when there is a manifest necessity for that action, to prevent the ends of public justice from being defeated.

We perceive no reason why the same provision of our Constitution should not be given the same construction. The same reason exists in the one case as in the other.

Suppose, for instance, a trial court should discover, after the jury had been sworn, that a juror had imposed himself upon the court for the purpose of either convicting or acquitting the accused, without regard to what the law and the testimony might require. Is the court powerless to protect itself from such imposition? Must the court, in these days of many and rapid means of communicating intelligence, proceed with the trial which, if it ends in a conviction, must be set aside? Has the public no rights in the matter? It requires no stretch of the imagination to assume a case in which there might be a trial of such general interest that the full development of the testimony in one trial might make it very difficult, as well as expensive to the county, to secure a jury for a second trial of the same case. Must the judge who possesses this knowledge in a particular case proceed with the appearance of a trial which he, at the time, knows is in fact no trial at all? Must a trial, which is no trial in fact, be carried on when the court knows a conviction will not be permitted to stand, and is the defendant entitled to speculate on the prospect of an acquittal when it is known in advance that he stands no chance of conviction? We think these questions may be answered by saying that the framers of our Constitution did not intend to guarantee an accused any such right.

The provision of our Constitution that no person, for the same offense, shall be twice put in jeopardy of life or liberty, contains the qualification that if, in any criminal prosecution, the jury be divided in opinion, the court may discharge the jury and commit or bail the accused for another trial.

It cannot be contended that this qualification forbids a second trial except in those cases only where the jury was divided in opinion and therefore failed to arrive at a verdict. If this language was so construed, a second trial could be had in those cases only where the jury had, through disagreement, failed to arrive at a verdict. That no such result was intended is evidenced by the numerous cases in which a second trial was ordered by this court, in cases where the conviction had been reversed because of error in the trial in which the conviction was first had.

The case of *Whitmore* v. *State,* 43 Ark. 271, which, we concede, does not go to the extent of the Franklin and Martin cases, recognized that the language of the Constitution quoted is not to be taken as stating the only condition under which an accused may be twice tried for the same offense, and that there are cases in which a second trial may be had, the necessity for which did not arise from any failure of the jury to agree. The court there said: "Section 8 in the Declaration of Rights, Constitution of 1874, authorizes the court, in its discretion, to discharge a jury, in case of their inability to agree upon a verdict after a reasonable time for deliberation. And cases of overruling necessity for their discharge without verdict may sometimes arise, such as the illness or death of the presiding judge or of a juror. *Atkins* v. *State,* 16 Ark. 568. But the general rule is that the discharge of a jury, after the machinery of the court is fully organized for trial and judgment, without the consent of the defendant, expressed or implied, operates as an acquittal."

As was there said, the general rule is that the discharge of the jury, after the machinery of the court is fully organized for trial and judgment, without the consent

of the defendant, express or implied, operates as an acquittal. But it was there also said that other exceptions than the mere failure of the jury to agree might exist and authorize a second trial. These exceptions were stated to be reasons of overruling necessity. The court did not attempt to name all exceptions of that character, but merely gave illustrations of that necessity, such as the illness or death of the presiding judge or a juror. To these other exceptions might be added, to which, we think, assent would be readily given.

For instance, in *Burnett* v. *State,* 76 Ark. 295, the defendant was charged with seduction, and, after the jury was sworn, he married the prosecuting witness, whereupon the jury was discharged and the trial suspended. The defendant later deserted his wife, and was again put on trial. His plea of former jeopardy was overruled on the ground that, by taking advantage of the statute which permits one charged with seduction to marry the female seduced, and thereby suspending the prosecution, he had consented to the discharge of the jury, and his plea of former jeopardy was not sustained.

Was there here such an overruling necessity as was referred to in the Whitmore case? We think there was.

Here was a juror who, by concealing the fact that he had served on a former jury in the trial of the same case, had been accepted to serve as a juror on the second trial, and, as verdicts must be unanimous, the second trial must necessarily have resulted as did the first, in a mistrial, unless, indeed, all of the other jurors agreed with Middlebrook. Are courts powerless to protect themselves from such imposition? Can the administration of public justice be thus mocked and thwarted? We think what was so well said by the court from which we have quoted is applicable here, and that courts do have power to protect public justice from imposition when the necessity arises, as it here arose.

Of course, it may be conceded that this is a right which courts should only exercise when there is some

overruling necessity therefor, but we think it a right which should not be denied when that necessity exists.

There is no intimation here that the court had any purpose except to submit the case to the jury standing impartially alike to the prosecution and the defense, and we think there was no denial of any right guaranteed the accused by the Constitution, nor any abuse of discretion on the part of the court in the ruling made.

No error appears, and the judgment is affirmed.

McCULLOCH, C.J., (dissenting). In *Whitmore* v. *State,* 43 Ark. 271, this court declared the law as to when jeopardy attaches in a felony case and the effect thereof to be as follows (quoting from the syllabus):

"A prisoner is in jeopardy from the time that the jury is impaneled and sworn, in a court of competent jurisdiction, upon an indictment sufficient in form and substance to sustain a conviction; and the entry of a *nolle prosequi,* or discharge of a juror, after that, without his consent, operates as an acquittal, except in cases of overruling necessity, as the death or illness of the judge or a juror, or inability of the jury to agree on a verdict."

In the opinion it is further said: "This court has heretofore drawn the line where jeopardy begins at the swearing in of the jury to try the issue. And this is in accordance with the overwhelming weight of authority and with the best considered cases."

That there has been no shifting of the weight of authority on this subject is evidenced by the recent statement in Ruling Case Law (vol. 8, p. 138), as follows:

"A person is in legal jeopardy when he is put on trial, before a court of competent jurisdiction, on an indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance, and a jury is said to be thus charged when it is impaneled and sworn. The opinion prevails to some extent that jeopardy does not attach until a verdict is rendered. This doctrine, however, limits the term jeopardy to mean the same as *autrefois*

*acquit* or convict. But the word means exposure to danger; and, where a person is put on his trial on a charge of a crime before a jury sworn to decide the issue between the State and himself, he is then exposed to danger in that he is in peril of life or liberty.''

In the opinion in the Whitmore case the court referred with approval to a decision of the Supreme Court of Ohio, holding that where, after the impaneling of a jury, it is discovered that one of the jurors had served on the grand jury, and the defendant objected to proceeding in the trial with the jury thus impaneled, it was within the province of the court to discharge the jury and substitute another, for the reason that the objection of the defendant created a necessity which prevented proceeding with that jury. The principle announced in the Ohio case and approved in the Whitmore case was the basis of our decision in *Franklin* v. *State,* 149 Ark. 546, and *Martin* v. *State,* 161 Ark. 423. The fact must be recognized that the court has now overruled *Whitmore* v. *State, supra,* without saying so in so many words. In the present case the appellant did not object to proceeding before that jury, which had been regularly impaneled and sworn, nor did he consent, either expressly or impliedly, to the discharge of juror Middlebrook; on the contrary, he expressly objected to the discharge of that juror. In the Whitmore case the court said:

''The service of Blevins on the grand jury which preferred the bill did not render him incompetent to sit on the petit jury which tried the case. It was only cause of challenge for implied bias. The trial then might well have gone forward with the jury as originally constituted. And, since it does not appear that any objection was taken by the defendant on account of the fact disclosed by Blevins, it must be presumed that he was insisting on his constitutional right to a trial before that jury, of which Blevins was a member.''

The facts of the Whitmore case were precisely the same as in the present case, except that in one case the

juror had been a member of the grand jury which returned the indictment, and in the other the juror had been a member of a former trial jury. That distinction does not alter the principle, for, in either case, the juror was not incompetent, but was subject to challenge for cause, and the action of the court in discharging the juror was merely to allow the prosecuting attorney to exercise a challenge for cause after the impaneling of the jury.

The court, in overruling the Whitmore case, has followed what was then, and is now, the minority rule, and the effect of the present decision is to hold that the court may, in its discretion, allow a juror to be challenged for cause after the jury has been impaneled and sworn. The effect is to overturn the ancient rule that jeopardy attaches when the jury is impaneled and sworn, and the logical result of this holding is that, any time before a verdict, the jury may, in the discretion of the court, be discharged. There is no place to draw the line between the impaneling of the jury and the rendering of a verdict, and if the court may, over the objections of the accused, excuse a juror immediately after the impaneling of the jury, it may likewise do so immediately before the return of the verdict. The court intimates, in the concluding part of the opinion, that the trial court has the power to prevent an imposition upon the court by discharging a juror after the jury is impaneled and sworn. I have always understood the law to be that, after jeopardy has attached, it is too late for the State to complain of fraud or imposition in the impaneling of the jury or any other irregularity in the proceedings, for the accused is protected from then on from another trial. Whatever ill treatment the cause of the State may receive after that time is without remedy.

It seems to me that the decision in the present case introduces into the criminal law an entirely new principle, to the effect that, after an accused has been put in jeopardy, the State may be protected from injustice by discharging the jury, or a member thereof, and substituting another thought to be more impartial.