## HARRIS *v.* STATE.

Opinion delivered May 7, 1928.

*J. O. A. Bush* and *Dexter Bush,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

HUMPHREYS, J. Appellant and Billy Cornelius were jointly indicted at the July, 1927, term of the circuit court of Nevada County for the crime of murder in the first degree for killing Aud Hooker. Subsequently the charges were severed, and, upon a second trial of the case, appellant was convicted of murder in the second degree and adjudged to serve a term of five years in the State Peni-

tentiary as a punishment therefor, from which is this appeal.

The first assignment of error urged by appellant for a reversal of the judgment was a refusal of the trial court to sustain his plea of former jeopardy. On the first trial of the case at the July, 1927, term of court, after the jury had been impaneled, sworn to try the cause, the opening statement of counsel made and the testimony of one witness heard, the court was informed that J. A. White, a member of the jury, was on appellant's bond, whereupon the court discharged him and ordered the selection of another juror. After the juror had been excused, appellant made a motion to be discharged on the ground that he was placed in jeopardy when the jury was sworn, which motion was overruled by the court, over appellant's objection and exception. Another juror was selected, but the jury failed to agree upon a verdict. The case was continued to the January, 1928, term of court. When the case was called for trial, appellant filed a written plea of former jeopardy, to which he attached the affidavit of J. A. White, the juror who had been discharged by the court on the first trial, to the effect that he had signed appellant's bail bond at the request of one of his friends and not because he had any interest in the case. He further deposed that he had no bias or prejudice for or against the appellant. The court again overruled appellant's plea, over his objection and exception. Appellant argues that the court had no right to discharge the juror without an affirmative showing of bias by the State. The reason for appellant's position is that being on the bond of an accused does not disclose bias, either actual or implied, on the part of a juror, as defined by §§ 3159 and 3160 of Crawford & Moses' Digest. It is true that § 3160 of Crawford & Moses' Digest prescribed the conditions under which challenges may be made for implied bias, and being on the bail bond of an accused is not one of the conditions. We think, however, the condition is covered by § 3159 of Crawford & Moses' Digest, which is as follows:

"Actual bias is the existence of such a state of mind on the part of the juror in regard to the case, or to either party, as satisfies the court, in the exercise of a sound discretion, that he can not try the case impartially and without prejudice to the substantial rights of the party challenging."

Under the section quoted, actual bias is the state of mind of a juror. By the act of signing the bond in the instant case the juror aligned himself with the cause of appellant, and necessarily became interested in the result of the prosecution. He was responsible for the presence of appellant, and, had appellant not appeared, would have been responsible on the bond, and was responsible thereon until taken into custody after conviction. Indeed, it would be a travesty on justice to allow interested jurors to try cases. In the case of *Martin* v. *State,* 163 Ark. 103, 259 S. W. 6, 33 A. L. R. 133, this court quoted with approval from the Supreme Court of Maine in the case of *Slorah* v. *State,* 118 Me. 203, 106 A. 168, 4 A. L. R. 1256, the following language: "The administration of justice requires that verdicts, criminal as well as civil, shall be found by impartial juries, and shall be the result of honest deliberations absolutely free from prejudice or bias. The public as well as the accused have rights which must be safeguarded. If, during the progress of the trial, it shall become known to the court that some of the jury do not stand indifferent, whether toward the State or the accused, it would be a travesty on the administration of justice if the trial must proceed, and, if acquitted by such a tribunal, the constitutional safeguard may be invoked against placing him in jeopardy before an impartial jury. Such a trial obviously should not constitute jeopardy, whether the jury be prejudiced or influenced in behalf of the accused or the State. To prevent such a perversion of justice, it is now well recognized that, if it comes to the knowledge of the presiding justice that such conditions exist, it creates that imperious, manifest necessity that will war-

rant a discharge of the jury, and such discharge will constitute no bar to another trial on the same indictment.'' The state of mind of a juror is necessarily manifested by signing the bond of an accused. The trial court did not err in overruling appellant's plea of former jeopardy.

The second assignment of error by appellant for a reversal of the judgment was the refusal of the trial court, after severance of the charges, to try Billy Cornelius first. The court overruled a motion of appellant, in which Billy Cornelius joined, to that effect, over appellant's objection and exception. In support of this assignment of error, appellant cites § 3140 of Crawford & Moses' Digest, which provides:

''When jointly indicted for a felony, any defendant requiring it is entitled to a separate trial, and, when the trials are severed, the defendant may elect the order in which they shall stand upon the docket for trial; but, if no such election is made, they shall stand in the order in which their names appear upon the indictment.''

This statute is merely directory, and not mandatory. After the cases of persons jointly indicted for crime are severed, the cases stand on the docket independently of each other. Neither has any concern about the order of trial of the other. This is the interpretation placed upon the statute quoted by this court in the case of *Sims* v. *State,* 68 Ark. 188, 56 S. W. 1062, and *Burns* v. *State,* 155 Ark. 1, 243 S. W. 963. The court did not err in trying the case of appellant before placing Billy Cornelius on trial.

The third assignment of error by appellant for a reversal of the judgment was the admission of the testimony of the sheriff to the effect that appellant did not tell him that Aud Hooker had shot up the door in the house before he killed him. This is an issue in the case, and the conduct of appellant in failing to claim that the deceased had shot into the house on that night was admissible as tending to throw light upon that issue. The

statement of the sheriff was competent, and the court did not err in admitting it.

The fourth and last assignment of error by appellant for a reversal of the judgment was the refusal of the court to grant a new trial on account of the alleged disqualification of Bob Davis, a member of the jury which convicted appellant. It was stated in an affidavit of S. R. Morgan, attached to the motion, that he heard Bob Davis say, before being selected on the jury, that he did not see how any man could vote to turn appellant loose. Bob Davis was introduced as a witness, and denied making the statement, so it became an issue of fact to be determined by the trial court. The finding of the court, on conflicting evidence, that the juror was not disqualified, is conclusive. *Pendergrass* v. *State,* 157 Ark. 364, 248 S. W. 914; *Corley* v. *State,* 162 Ark. 178, 257 S. W. 750; *Lane* v. *State,* 168 Ark. 528, 270 S. W. 974.

No error appearing, the judgment is affirmed.