McDANIEL *v.* STATE.

4902                                   313 S. W. 2d 77

Opinion delivered April 28, 1958.

[Rehearing denied June 2, 1958]

*D. B. Bartlett, Bob Bailey, Jr.,* and *Richard Mobley,* for appellant.

*Bruce Bennett,* Atty. General; *Ben J. Harrison,* Asst. Atty. General, for appellee.

PAUL WARD, Associate Justice. The principal issue on this appeal is the right of a trial judge to discharge a juror after all the jurors have been chosen and sworn to try the case.

Charlie McDaniel, appellant, was charged with murder in the second degree for killing one W. J. Morrow. He was convicted of voluntary manslaughter and sen-

tenced to serve a term of 2 years in the penitentiary. Some of the details surrounding the killing are in dispute but we find ample evidence in the record to support the jury's finding.

The killing took place at the rural home of deceased on July 2, 1956. The record discloses that there had previously been some difficulty between them over the possession of the place where the deceased and his family were living. On the fatal day some of appellant's cows were found in the deceased's garden while the deceased was away from home. He returned about 8 P. M. and while he was eating supper his wife told him about the cows. About this time appellant and his wife drove up to the house in a truck and he began mending the garden fence. According to deceased's wife Morrow walked outside and said, "Charlie what are you doing?" Appellant replied, "I am fixing the fence." The deceased said, "Leave it alone and I will fix it in the morning." Thereupon as deceased was walking toward the garden appellant shot him. After the first shot witness heard 2 or 3 more shots. According to Mrs. Morrow her husband did not have a pistol. This version of the shooting was sharply contradicted by appellant's wife. According to her, while the deceased was approaching appellant, his stepson, Arnie Rhoads, was behind him with a shotgun in his hand. When deceased was about 17 feet away from appellant he said "Damn you, I said for you to leave that fence alone, and I will fix you and it too." Then the deceased reached into his hip pocket with his right hand, and, when he was about 6 feet away, appellant shot him. There were other conflicts in the testimony pertaining to the killing, but they were resolved by the jury under proper instructions by the court.

*One.* The principal question arose in the following manner. All 12 jurors were chosen and sworn to try the case just before the noon hour, when court was recessed until 1:45 P. M. Before the recess was taken the court dismissed all unused members of the regular and special jury lists "subject to further services upon order and direction of the court . . ." When court

was reconvened at the appointed time the court made the following statement:

"It has been brought to the attention of the court that after the examination of the jurors on the *voir dire* examination by the attorneys and after the jury had been duly-sworn to try the case in question, that one of the Jurors, Mr. John E. Blackard, is related to the defendant, Mr. McDaniel, in the case, and without suggesting that Mr. Blackard would not be a fair and impartial juror in the case and that he would not conscientiously return such verdict as he thought justified under the law and the evidence, the court thinks that it is the best policy in compliance with the law on the face of the statements made that the juror is related within the fourth degree of consanguinity or affinity, and that he should be excused. The court at this time will excuse Mr. Blackard from service on the jury. I am going to ask that counsel proceed with the special jurors until the panel is selected."

By Mr. Bailey: "Save our exceptions, and the further objection, I also object to selecting another juror from the special list because the special list was discharged for the term, and only the ones that happen to be in Clarksville or in the Court House are available."

It is earnestly and ably contended by appellant that the above action on the part of the court in dismissing Blackard constituted reversible error. Section 39-102 Ark. Stats. provide that:

"No person shall serve as a petit juror who is related to either party to a suit within the fourth degree of consanguinity or affinity. Provided, further, that any prospective juror who qualifies generally for service in a cause, and is found to be related within the fourth degree of consanguinity or affinity to any attorney engaged in the trial of the case may be peremptorily challenged for cause by any attorney or attorneys representing the other side of the case."

As we understand appellant's reasoning in support of the above contention it may be considered more clearly under two separate divisions.

1. It was too late, says appellant, to discharge Blackard after the jury was completed and sworn in, citing Ark. Stats. § 43-1914 and § 39-115. The first section provides that a challenge to a juror "must be taken before he is sworn in chief, but the court, for good cause, may permit it to be made at any time before the jury is completed." The latter section provides exceptions shall not be taken to any juryman for cause after he is taken upon the jury and sworn as a juryman. It is urged by appellant that the statutes mean what they say and must be followed. The conclusion then drawn by appellant is that he had been placed in jeopardy, and therefore the court's action violated his constitutional right of a trial by jury. This reasoning however has been discarded by this court. In the case of *Harris* v. *State,* 177 Ark. 186, 6 S. W. 2d 34, the jury had been impaneled, sworn to try the cause, the opening statement of counsel made, and the testimony of one witness heard, when the court discharged a member of the jury (who was replaced by another juror) because it was disclosed that the challenged juror was on the defendant's bond. It was there held that the defendant had not been placed in jeopardy. In so holding the court relied on § 359, Crawford & Moses' Digest (Ark. Stats. § 43-1919) which reads:

"Actual bias is the existence of such a state of mind on the part of the juror, in regard to the case or to either party, as satisfies the court, in the exercise of a sound discretion, that he can not try the case impartially, and without prejudice to the substantial rights of the party challenging."

Also in *Franklin* v. *State,* 149 Ark. 546, 233 S. W. 688, and *Martin* v. *State,* 163 Ark. 103, 259 S. W. 6, we upheld the trial court in discharging a juror after the jury had been completed and sworn, denying the plea of former jeopardy. It follows therefore that the trial court, in this instance, did not commit reversible error in discharging Blackard, if he was in fact related to the defendant by affinity within the fourth degree, as found by the court.

It is urged by appellant, however, that Blackard was not so related. The facts as to the relationship, as set forth in appellant's argument, appear to be: Appellants' uncle married a sister to Blackard's father. If this is correct, then Blackard was not related by affinity to appellant, because his wife was no blood relation of appellant. We stated the applicable rule in *North Arkansas and Western Railway Co.* v. *Cole*, 71 Ark. 38, 70 S. W. 312, where it was said: "Affinity is the tie which arises from marriage between the husband and the blood relations of the wife, and between the wife and the blood relations of the husband."

The trouble here, however, is that we find no competent evidence in the record to support appellant's version of the relationship. The alleged relationship is shown in a note made by the reporter. This of course does not constitute testimony in the case, and, moreover, it is not shown that the same information was brought to the attention of the court. It would appear from that portion of the record heretofore copied that the court was merely informed that the two persons were related within the fourth degree. Also, attached to appellant's motion for a new trial are two exhibits which show the alleged true relationship, but these cannot be considered as a new addition to the evidence taken at the trial. In *Hyde* v. *State*, 212 Ark. 612, 206 S. W. 2d 739, we said, ". . . a motion for new trial cannot be used to bring into the record that which does not otherwise appear of record." Thus, viewed in the light of the decisions heretofore cited and the state of the record, we conclude that the action of the trial court in dismissing Blackard from the jury panel was not reversible error.

2. On the other hand, if we assume it to be true that appellant's uncle was married to a sister of Blackard's father and that this relationship was made known to the trial court during the recess hour, still we think no reversible error would be shown. We must assume that the trial court acted in good faith and in the interest of justice, even though he might have been mistaken in thinking Blackard and the appellant were related with-

in the fourth degree as defined and prohibited by statute. Likewise then, we must assume that appellant and Blackard were also mistaken as to the law or facts, because no effort was made, at that time, according to the record, to enlighten the court. In any event, it is conceded that some family relationship existed between appellant and the juror which was known by the trial court, and the situation called for the exercise of judgment and discretion by the court either as to the law or the facts. We cannot say the court abused its discretion. In *Montaque* v. *State*, 219 Ark. 385, 242 S. W. 2d 697, the court approved this statement: "The question of the impartiality of the jury, as guaranteed by the Constitution, Art. 2 § 10, is a judicial question of fact within the sound discretion of the trial court."

Two. When Blackard was discharged he was replaced by a juror from the special panel, referred to above, and this is assigned as reversible error. We do not agree. The new juror was accepted by both sides, and there is no showing whatsoever that he was in any way disqualified. Moreover, the record shows that appellant had left at the time one peremptory challenge which he had not exercised. This being true appellant is in no position to complain. See: *Washington* v. *State*, 213 Ark. 218, 210 S. W. 2d 307. We have also often held that a litigant has no special right to any particular juror. See: *Green* v. *State*, 223 Ark. 761, 270 S. W. 2d 895.

We have examined all other assignments contained in appellant's motion for a new trial, but find no reversible error.

Affirmed.

ROBINSON, J., concurs.