JONES *v.* STATE.

4922                                                  320 S. W. 2d 645

Opinion delivered February 9, 1959.

*Sam L. Anderson* and *Earl J. Lane,* for appellant.

*Bruce Bennett,* Atty. General and *Ben J. Harrison,* Asst. Atty. General, for appellee.

ED. F. McFADDIN, Associate Justice. Two issues are presented on this appeal: one is the plea of former jeopardy; and the other is the appealability of the judgment refusing to discharge the accused.

Information was duly filed, charging the appellant, Hiram "Jimmie" Jones, Jr. with the crime of first degree murder for the homicide of George Stockton, Jr. The trial commenced in the Circuit Court on October 7, 1957; eleven jurors were selected that day; on October

8th the jury was completed and sworn to try the case (§ 43-2109 Ark. Stats.); and two witnesses were examined. The first witness, Lt. Joe Campbell of the Hot Springs Police Force, testified that he and Joe Dodd, a fellow officer, received a call to go to the Flamingo Club; that when they arrived they found Mrs. James was there; that they found the body of George Stockton near the bar; that Officer Campbell instructed Officer Dodd to call an ambulance; that Campbell called the Coroner and Chief of Police; that the Chief of Police arrived with other officers; that Campbell found four bullet slugs at various places in the Club room; that he turned the bullet slugs over to an FBI Agent to send to Washington, D. C. to discover the calibre; and that after a brief inquiry of Mrs. James she was escorted to her apartment by Officer Dodd. Officer Joe Dodd of the Hot Springs Police force testified to substantially the same effect as did Lt. Joe Campbell; and the Court adjourned until the next morning.

On October 9, 1957 Mr. Hebert, the Prosecuting Attorney, announced to the Court that he had just learned that one of the jurors — Mrs. Ensminger — was a sister of the witness, Joe Campbell.[1] For that reason the State moved for a mistrial; and here is the record:

"MR. HEBERT: . . . It is therefore moved by the State of Arkansas, in view of the development here, that the court declare a mistrial.

---

[1] Here is the record of matters leading up to the Court's ruling:
"THE COURT: None of us knew anything about that. Is that true?
"MRS. ENSMINGER: Yes, I probably was the most surprised person in the courtroom. I had no idea that he was in the case, that he knew anything about it because he never mentioned it to me.
"MR. HEBERT: Mrs. Ensminger, of course the State of Arkansas, through the prosecuting attorney's office, had no knowledge of the relationship existing between you and it is no—it comes as a complete surprise this morning that you are brother and sister. The State of Arkansas, on account of that relationship feels, that there is the probability that if we proceed with this trial and that it should develop at any time during the course of the trial that that relationship does exist between you, and which you have testified actually exists before the court, that it would be cause for the Supreme Court, if the case were appealed, to reverse the case and remand it back for another trial and we would just be wasting our time in proceeding further here. It is therefore moved by the State of Arkansas, in view of the development here, that the court declare a mistrial."

"THE COURT: Mr. Hebert, do you consider the possibility of double jeopardy?

"MR. LANE: The defendant resists the motion of the State and wishes to state for the record that the defendant is perfectly satisfied with the juror, Mrs. Joe Ensminger.

"MR. HEBERT: The State is also satisfied with the juror but the State feels that under the law that she would be an incompetent juror.

"THE COURT: In view of the position of the State in the matter the court will grant the motion and will declare a mistrial . . .

"MR. LANE: Let the record show that the defendant objects to the ruling of the court declaring a mistrial and asks that our exceptions be noted of record for the reason that, as the court has mentioned, the testimony of Mr. Campbell was not controverted, and he knew nothing about the actual fact of the alleged murder and did not testify with regard to that . . .

"MR. LANE: I move that the court turn the defendant loose on the grounds that he has been placed in jeopardy. The jury has been sworn in, testimony has been presented to the court and jury against him and he has been placed in jeopardy, and of course one of our oldest laws is that a man cannot twice be placed in jeopardy for the same crime . . ."

The Court declared a mistrial on October 9, 1957; but did not rule on the jeopardy plea at that time. Then, on April 1, 1958, the following occurred in Court:

"THE COURT: The matter coming on for hearing at this time is the case of the *State of Arkansas* v. *Hiram Jimmie Jones, Jr.,* No. 10,550, in which case the defendant is charged with murder in the first degree. The defendant has filed a motion which has been set for hearing at this time. The motion being for a dismissal of the Information upon the ground of double jeopardy . . .

"STIPULATION: It is hereby agreed and stipulated by and between counsel for the State of Arkansas and counsel for the defendant that the defendant's case has been set for trial on April 8, 1959, and that he is to be tried on the same Information charging him with the crime of murder in the first degree that he was tried on, on October 7, 1957, which resulted in the Court declaring a mistrial."

The Court then overruled the appellant's plea of former jeopardy and denied the motion to discharge the accused; and from that order there is this appeal, presenting the two questions first mentioned in this opinion.

I. *The Plea Of Former Jeopardy.* Article 2, Section 8 of the Arkansas Constitution says: ". . . and no person, for the same offense, shall be twice put in jeopardy of life or liberty . . ."[2] In 15 Am. Jur. 38 "Criminal Law" § 359 *et seq.*, the text reads:

"It is an established maxim of the common law, in the administration of criminal justice, constantly recognized by elementary writers and courts of judicature from a very early period down to the present time, 'that a man shall not be brought into danger of his life or limb for one and the same offense more than once.' It has been said that the test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense . . . The right not to be put in jeopardy a second time for the same cause is as important as the right of trial by jury and is guarded with as much care. Accordingly, there will be found in the Constitution of the United States and in the Constitutions of most of the states a provision that no person shall for the same offense be twice put in jeopardy, which, however, is only a recognition of the common-law rule."

We have a number of cases on this very important constitutional right against double jeopardy. In *Whitmore* v. *State,* 43 Ark. 271, decided in the November term of 1884, Justice WILLIAM W. SMITH said:

---

[2] The constitutional provision also says that if the jury cannot agree upon a verdict, then the retrial is not double jeopardy.

"Sec. 8, in the Declaration of Rights, Constitution of 1874, authorizes the court in its discretion, to discharge a jury, in case of their inability to agree upon a verdict after a reasonable time for deliberation. And cases of overruling necessity for their discharge without verdict may sometimes arise, such as the illness or death of the presiding judge or of a juror. *Atkins* v. *State,* 16 Ark. 568. But the general rule is, that the discharge of a jury, after the machinery of the court is full organized for trial and judgment, without the consent of the defendant expressed or implied, operates as an acquittal . . .

"This court has, heretofore, drawn the line where jeopardy begins at the swearing in of the jury to try the issue. And this is in accordance with the overwhelming weight of authority and with the best considered cases. If, after that, the jury is discharged without an obvious necessity and without the defendant's consent, express or implied, he cannot be again placed upon trial for the same offense, where life or liberty is involved."

When the jury is finally sworn to try the case (§ 43-2109 Ark. Stats.), jeopardy has attached to the accused; and when, without the consent of the defendant, express or implied, the jury is discharged before the case is completed, then the constitutional right against double jeopardy may be invoked, except only in cases of *"Overruling necessity."* Some cases illustrating what is meant by "overruling necessity" are these: *Franklin* v. *State,* 149 Ark. 546, 233 S. W. 688, wherein it was discovered that one of the jurors had previously formed and expressed an opinion of the guilt of the accused; *Martin* v. *State,* 161 Ark. 423, 256 S. W. 367, wherein one of the trial jurors announced that he had been a member of the Grand Jury that returned the indictment; *Martin* v. *State,* 163 Ark. 103, 259 S. W. 6, 33 A. L. R. 133, wherein one of the jurors announced that he had been a juror in the former trial of the case; and *Harris* v. *State,* 177 Ark. 186, 6 S. W. 2d 34, wherein it was learned that one of the jurors was on the appearance bond of the defendant.

In each of the above discussed cases there was a real reason — *i. e.* "overruling necessity" — to discharge the jury; and we held that the rule against double jeopardy had not been violated in those cases.[3] But, in the case at bar, there was no sound reason for discharging the jury, and there was certainly no "overruling necessity." The relationship of a juror to a witness in the trial does not *per se* disqualify the juror.[4] *Arnold* v. *State,* 150 Ark. 27, 233 S. W. 818. Officer Campbell's testimony was practically the same as that of Officer Dodd's; and Officer Campbell's testimony did not directly relate to the facts of the homicide. Furthermore, the defendant was perfectly willing to have Mrs. Ensminger as a juror, and so informed the Court. We can see no good reason for declaring a mistrial after the mention of jeopardy, and after the accused had urged the Court to continue the trial. So, the effect of the trial of October 8th was to put the accused in jeopardy; and his motion of April 1, 1958, to be discharged because of former jeopardy, should have been granted.

It may be said that to allow the plea of double jeopardy is to allow a guilty man to escape: that argument has been made in many cases.[5] The constitutional right against double jeopardy must be observed for the benefit of all the people, even though under that constitutional right it may happen that in some case some guilty person will escape punishment.[*]

II. *Appealability.* The Attorney General has filed in this Court a motion to dismiss the appeal, saying:

[3] See 31 Am. Jur. 166 "Jury" § 192; and see annotation in 18 A.L.R. 375, and note in Ann. Cas. 1912B page 1060.

[4] For a recent case involving the question of jeopardy, see *McDaniel* v. *State,* 228 Ark. 1122, 313 S. W. 2d 77.

[5] At the conclusion of a trial in Circuit Court, there was an erroneous ruling by the Court which resulted in the acquittal of the accused. The State appealed to this Court and it was held that the Trial Court's ruling was erroneous. Nevertheless, it was held that the accused could not be again tried for the offense, since he had been before put in jeopardy. See *State* v. *Dulaney,* 87 Ark. 17, 112 S. W. 158.

[*] In *Coffin* v. *U. S.,* 156 U.S. 432, 39 L. Ed. 481, Justice White gave the history of the statement: ".  .  .  it is better that five guilty persons should escape unpunished than one innocent person should die."

". . . the order of the Garland Circuit Court overruling appellant's motion to dismiss, and upon which this appeal is based, is not such a final judgment as will support an appeal to this Court under the provisions of Ark. Stats. (1947) § 43-2706."

We deny the motion to dismiss the appeal; and our authority for such ruling is *Ware* v. *State,* 159 Ark. 540, 252 S. W. 934, wherein the defendants claimed in the trial Court that they were entitled to be discharged because they had remained in jail without being brought to trial beyond the end of the second term after the indictment.[6] The Trial Court denied the motion for discharge of the accused; and when the case reached this Court the Attorney General contended that the trial Court's order was not final and appealable. We held to the contrary, saying, *inter alia*:

"Suffice it to say, they had the right to move the court having jurisdiction of these causes to discharge them from the indictments; and, if they are entitled to such discharge, the granting of their motion by the court would have given them their rights under the statute, whereas the overruling of their motion denied them such rights. No order or judgment that any court could have thereafter made would have placed them in the position and given them the rights they were entitled to at the time the order herein appealed from was made by the trial court. That order concluded all the rights they then had under the statute, if any, against them, and this is so even though, after the order overruling their motion, they may have resorted to *habeas corpus* in the same, or some other court, or to this court for a writ of prohibition. The rights of immediate freedom and a discharge from all the consequences of the offense charged against them were certainly most sacred rights. They bear the brand of '*Magna Charta*'."

That holding is applicable here. If the defendant's claim against double jeopardy contains merit, then the

---

[6] The sections quoted in the opinion were C. & M. Dig., §§ 3132, 3134, and 3135, which sections may now be found in § 43-1708 *et seq.* Ark. Stats.

Constitution requires that he should be freed; and the denial of his freedom is the point at issue. Furthermore, having concluded — as we have — that the appellant's plea of former jeopardy was well founded, it would certainly be putting form above substance for us to hold that he could not prevail at this time on his motion to discharge; but that he would have to suffer a long and expensive trial before he could bring to this Court the issue of former jeopardy. Justice demands that an accused have his rights tested and determined speedily. As the Constitution says in Article 2, § 13: "Every person is entitled . . . to obtain justice . . . promptly and without delay."

It follows that the judgment of the Circuit Court is reversed and the cause is remanded, with directions to uphold the appellant's plea of former jeopardy and to discharge him.