CODY AND MUSE *v.* STATE.

5091                                     371 S. W. 2d 143

Opinion delivered October 14, 1963.

*Penix & Penix,* for appellant.

*Bruce Bennett,* Attorney General, By *Richard B. Adkisson,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. This appeal results from the refusal of the Craighead Circuit Court to dismiss forgery charges against appellants on grounds of double jeopardy. The facts, briefly, are as follows:

Appellants, James D. Cody and Gardner Lee Muse, were arrested and incarcerated in the Craighead County Jail on November 17, 1962. An information charging them with forgery was filed ten days later in the Circuit Court. Neither defendant was able to make bond,

and they have remained in custody since their arrest. Five months later the court was advised that appellants were indigent and unable to retain counsel; the court, on April 17, 1963, appointed counsel to defend appellants on the charge, and the next day, April 18, the trial began. The jury was selected, impaneled and sworn, and the state proceeded to call five witnesses, including merchants, whose testimony dealt with the claimed forgery, and officers, who testified to a confession by Muse and certain oral statements by Cody. Defense counsel moved for a mistrial after the Muse confession was read, because the confession included incriminating statements relative to Cody. The jury was instructed that the evidence should not be considered as to Cody, and the motion for mistrial was overruled. At the conclusion of the testimony of these five witnesses, the state rested. Charles Muse, a brother of defendant Muse, was placed on the stand, evidently for the purpose of testifying to mental incompetency on the part of his brother, dating back to a harrowing war experience, but when Charles was asked, ''Where has your brother been in the years since World War II?'' the Prosecuting Attorney objected, and the court sustained the objection. Appellant, Gardner Muse, then testified, stating, *inter alia,* that he was drunk and had been in that condition for two days at the time the checks were written; that he had no recollection of writing same, and subsequently mentioned that he had taken a number of shock treatments. At the conclusion of his testimony, the trial was recessed over the weekend. When the court reconvened on Monday morning, the trial judge in chambers made the following statement:

''On Thursday, April 18, 1963, at about 4:45 P.M. this Court was recessed until this morning. At the time of the recess the defendant, Gardner Lee Muse was on the stand. The defendant Muse had entered a general plea of not guilty to the crime of forgery upon which he is being tried. Prior to the commencement of the trial no notice had been given or indication made that insanity would be a defense. During the course of exami-

nation of witnesses, the testimony drifted toward the defendant's actions tending to lead to a showing of the possibility of insanity. Certain rulings were made by the Court relative to the issue of insanity and of the competency of testimony relating thereto. During the adjournment of this case, the Court has had an opportunity to further consider the matter and the law pertaining thereto and now makes this ruling: under the general plea of not guilty, this defendant has the right to avail himself of any defenses which the testimony adduced in this cause tends to establish including that of insanity. Any ruling heretofore made by the Court in conflict herewith shall be superseded by this ruling. If any of the parties wish to recall any of the witnesses for further examination in view of this ruling, they will be permitted to do so."

The state, through the Assistant Prosecuting Attorney, then moved the court to declare a mistrial in the case, and order Muse committed to the Arkansas State Hospital for observation and examination. This motion was made on the basis of; Ark. Stat. Ann. § 43-1301 (Supp. 1961), the pertinent portion of which provides:

"If the trial had already begun when the issue of insanity is raised, and the court deems it necessary for the proper administration of justice that a mistrial be declared, it shall be the duty of the judge to declare such mistrial, and then to proceed as herein provided. * * *"

Defense counsel objected, and the court denied the motion, stating:

"If after proceeding with the evidence it is shown that there is a possibility of insanity, then the Court under the statute can exercise its discretion as to declaring a mistrial and have him sent to the State Hospital for observation, or in the alternative, may have him examined by two local doctors. At this time the Court finds nothing in the record to justify a mistrial for observation of the defendant."

Charles Muse, the brother of appellant, was then recalled to the stand, and testified that. the mental condition of his brother had radically changed after the war. He related a number of incidents which tended to show a highly nervous and incompetent condition, and further testified that his brother had, in 1960, been a patient in the Psychiatric Ward at Kennedy Hospital, where he had received a number of shock treatments, and had also been committed to the Mississippi State Hospital twice. Following the testimony of this witness, the court called a short recess, and in chambers made the following statement to counsel:

"Gentlemen, in view of the trend of the testimony that has been adduced from this particular witness, the brother of the defendant, and a close associate, the court deems it necessary for the proper administration of justice to declare a mistrial and commit the defendant to the State Hospital for observation."

Defense counsel strenuously objected, and likewise vigorously objected and noted exceptions when the court announced that it was declaring a mistrial also as to Cody, counsel announcing that he would plead double jeopardy as to both defendants. The court entered its order directing that Muse and Cody be delivered to the State Hospital for Nervous Diseases for the purpose of observation and examination, and directed that all proceedings in the case be held in abeyance pending the completion of such examinations. Appellants filed their motion seeking dismissal of the cause on grounds of former jeopardy, and the court entered its order overruling such motion, and granting an appeal.

Before discussing appellants' contentions, we might first make mention of one of the arguments advanced by the state. In the instant case the Prosecuting Attorney, after the court had announced that it was declaring a mistrial as to Cody, called attention to the fact that this defendant had already moved for a mistrial himself, and the Prosecutor stated: "At this time the state joins in the motion * * * that a mistrial be granted in this

case." Counsel for appellants then asked to withdraw the motion. It is difficult to determine from the record what action was taken by the court in this respect; in fact, the record does not reveal that any order or statement was made by the court relative to this request. It does not appear, however, that the court's order declaring a mistrial was in any wise based on defendant's earlier motion. Of course, this motion had already been passed upon and was not at issue when the insanity of Muse was suggested by the evidence.

The Attorney General argues that Cody, by his earlier request for mistrial, "waived his constitutional right of jeopardy notwithstanding the trial court originally denied the motion * * *." We do not agree with this argument. The situation is closely akin to the Florida case of *State* v. *Himes,* 15 So. 2d 613. In that case, the defendant moved for a mistrial on grounds of the admission of improper testimony (as was here done), and the motion was overruled by the trial judge. Thereafter, the state after it appeared that it would be unable to establish a case, joined in the motion, and the defendant attempted to withdraw his motion, which the court denied, such denial being based upon the fact that the state had already acquiesced in the motion. The Supreme Court of Florida reversed the trial court, holding that the defendant should have been permitted to withdraw his motion. Here, too, even if the court had based the mistrial on appellants' earlier motion (which evidently was not the case), we would reverse, and hold that the motion for withdrawal should have been granted.

Appellants devote the first point in their brief to the fact that the order overruling the motion to dismiss is appealable, and, among other cases, cite *Jones* v. *State,* 230 Ark. 18, 320 S. W. 2d 645. However, the appealability of the order is not at issue since no motion has been made by the state to dismiss the appeal, the Attorney General apparently conceding that the order is appealable, and that *Jones* v. *State* is sufficient authority for that conclusion. While it is true that the second trial has not been set, and it is within the realm of possibility that a

second trial would never be held, the proceedings need not advance to that extent before the issue of double jeopardy can be passed upon. In the Jones case, we said:

"When the jury is finally sworn to try the case[1] (§43-2109 Ark. Stats.), jeopardy has attached to the accused; and when, without the consent of the defendant, express or implied, the jury is discharged before the case is completed, *then*[2] the constitutional right against double jeopardy may be invoked, except only in cases of 'Overruling necessity.' "

Of course, it would be pointless to send a case back for re-trial, necessitating the additional expense to the county, and depriving the defendants of their freedom for months longer, if we feel that the contention of double jeopardy contains merit and would eventually be upheld under the facts presented. As stated in *Jones* v. *State, supra:*

"If the defendant's claim against double jeopardy contains merit, then the Constitution requires that he should be freed; and the denial of his freedom is the point at issue. Furthermore, having concluded—as we have—that the appellant's plea of former jeopardy was well founded, it would certainly be putting form above substance for us to hold that he could not prevail at this time on his motion to discharge; but that he would have to suffer a long and expensive trial before he could bring to this Court the issue of former jeopardy. Justice demands that an accused have his rights tested and determined speedily. As the Constitution says in Article 2, §13: 'Every person is entitled . . . to obtain justice . . . promptly and without delay.' "

The quoted language is appropriate in the case before us since we have concluded that the appellants' plea of former jeopardy is well founded.

Appellants vigorously argue that Section 43-1301 (heretofore referred to) is unconstitutional in that it, in effect, subjects a defendant to double jeopardy and is

---

[1] Referring to the original trial.

[2] Emphasis supplied.

thus in conflict with Article 2, Section 8, of the Constitution of the State of Arkansas. We do not agree with this contention. This court has rendered several opinions which hold that the defense of double jeopardy may not be invoked if the court has discharged the jury and declared a mistrial because of "overruling necessity." *McDaniel* v. *State,* 228 Ark. 1122, 313 S. W. 2d 77; *Franklin* v. *State,* 149 Ark. 546, 233 S. W. 688, and cases cited therein. This is in line with the general rule which is found in 22 C.J.S., Section 259, Page 674.

"The manifest necessity permitting the discharge of a jury without rendering a verdict and without justifying a plea of double jeopardy may arise from various causes or circumstances; but the circumstances must be forceful and compelling, and must be in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care."

In construing the statute under attack (43-1301) we must do so in view of, and in conformity with, the previous holdings of this court relative to "overruling necessity," wherein we have stated, that, in such cases, the constitutional prohibition is not violated. Under our decisions, we think the statute is perfectly valid, and the court may declare a mistrial when the issue of insanity suddenly enters the case, *provided* that the circumstances are compelling or give rise to an emergency over which neither court nor attorney could have any control or which *could not have been averted by diligence and care.* For instance, if a defendant first showed signs of insanity during the trial,[3] or if background facts, which

---

[3] In *U. S.* v. *Haskell,* Pa., 26 F. Cas. No. 15, 321, the members of a jury reported to the court that one of their fellow jurors, from his actions and conduct, was apparently insane; the jury rendered a verdict of guilty, but when the jury was polled, this juryman, evidently quite agitated, and declaring that he was not "quite collected," answered, "Not guilty." From his personal observation of the juror and the reports made from other jurors, the court declared a mistrial and discharged the jury. The next day, the defense contended that the discharge of the jury amounted to an acquittal (raising the double jeopardy argument) which contention was denied. On appeal, the Circuit Court of Appeals held that this was a case of necessity, and that the trial court had not abused its discretion in discharging the jury under the circumstances.

could not have been earlier determined, indicated insanity, or if the prisoner had been represented by counsel who had advised court officials that no issue of insanity would be raised, the court might well be justified in declaring a mistrial because of "overruling necessity." But the facts in the present case do not conform to those examples.

As far as Cody is concerned, the record reflects neither a plea of insanity nor a single line of evidence that would suggest this appellant to be insane. Even if the mistrial had been justified as to Defendant Muse, there was nothing to prevent the continuation of the trial as to Cody. It is apparent that there was no compelling reason, nor emergency, which made necessary the order of mistrial as to this appellant.

Turning to Muse, the transcript reflects that prosecuting officials had been in possession of the record sheet from the Department of Justice for several months,[4] and this sheet lists "S. H. Whitfield, Miss., Gardner Lee Muse, February 6, 1961, patient." From the colloquy between counsel, it appears that the sheet also reflected, "S. Hospital, Whitfield, Miss." While it is true that the record does not reflect the nature of the illness, or the report made by the hospital, we think the mentioned notation was sufficient to suggest to law enforcement officials that further inquiry should be made, particularly since the Arkansas institution for nervous diseases is likewise known as the State Hospital. A letter, telegram, or phone call to the State Hospital at Whitfield would doubtless have enabled these officials to have obtained pertinent information.

As heretofore pointed out, these prisoners had been in jail for five months before an attorney was appointed to represent them. If the Circuit Court had been advised that two indigent prisoners were in the jail, and in need of counsel, that court could have appointed an attorney

---

[4] This record, commonly called "rap sheet," is compiled through finger-printing, and sets out all arrests, convictions, or entrance into any jail or institution where the finger-prints of a subject are taken upon admission.

who would have then had an opportunity to confer with the clients, ascertain their backgrounds, and apply for an appropriate order before the case was set. [Ark. Stat. Ann. § 43-1304 (Supp. 1961).]

Under the circumstances herein, there was but little opportunity for appointed counsel to acquaint himself with Muse's past history, since he was appointed one day, and the trial commenced the next.

We hold that Section 43-1301 is valid, and when the issue of insanity is raised after the trial has commenced, the court may, where necessary for the proper administration of justice, declare a mistrial and commit a defendant to the State Hospital for observation. However, by "necessary," we mean "overruling necessity," as the term has been used herein.

In the instant case, we find no "overruling necessity," and this view is strengthened by the fact that the court's action in declaring a mistrial meant that these defendants would remain in jail for a number of months longer, and it would now appear that they have been in custody for about ten months. Article 2, Section 10, of our State Constitution, provides that "The accused shall enjoy the right to a speedy and public trial * * *." Appellants vigorously objected and excepted when the court entered its order. We think the objection was well taken, and the court should have granted the motion filed by appellants seeking dismissal of this case against them.

In accordance with the reasoning herein expressed, the court's order overruling the motion to dismiss on grounds of double jeopardy is reversed, cancelled, and set aside, and this cause is remanded to the Circuit Court with directions to enter an order dismissing Case No. 8255 against these appellants.

It is so ordered.

McFADDIN, J., dissents; ROBINSON, J., concurs.

24

Ed. F. McFaddin, Associate Justice (dissenting). I respectfully but vigorously dissent from the Majority Opinion; and here, in headnote style, are the reasons for my dissent:

I. The plea of former jeopardy, or double jeopardy, is premature in this case and should not be sustained. Former jeopardy can only be pleaded when the State attempts to bring the defendants to trial again.

II. Since the plea of former jeopardy is premature in this case, there is no occasion for this Court to now consider any of the other matters urged by the appellants.

III. But, if the other matters are considered, I am firmly of the opinion that the Trial Court did not abuse its discretion in ordering a mistrial.

Now, I elaborate:

On April 18, 1963, the defendants were jointly placed on trial for forgery. In the course of that trial one of the defendants introduced evidence of insanity; and there was evidence that the other defendant was intoxicated at the time of the alleged offense. On April 22, 1963, the second day of the trial, because the insanity matter was brought into the case, the Trial Court declared a mistrial and sent both of the defendants to the State Hospital for examination under the provisions of Ark. Stat. Ann. §43-1301 (Supp. 1961). Then on April 25, 1963, the defendants moved that the charges against them be dismissed on the grounds: (a) that Ark. Stat. Ann. §43-1301 was unconstitutional; and (b) that the defendants had been placed in jeopardy "and to subject them to another trial would cause them to be placed in double jeopardy."

The Court overruled the motion to dismiss; and from that order there is this appeal. The Majority is now holding that the Trial Court should have dismissed all charges against these defendants, for here is the concluding language of the Majority Opinion:

"In accordance with the reasoning herein expressed, the court's order overruling the motion to dismiss on grounds of double jeopardy is reversed, cancelled, and set aside, and this cause is remanded to the Circuit Court with directions to enter an order dismissing Case No. 8255 against these appellants. It is so ordered."

Just because the trial was not completed, the defendants are now to be discharged as free of the charged offense, when there is testimony that one of them was insane and that the other defendant was intoxicated.[1] The Majority reasons to its said conclusion on the theory of *former jeopardy,* or *double jeopardy,* as it is sometimes called. I have always understood that the plea of former jeopardy was a plea that was made by a defendant when he was brought to trial *the second time,* and related to the fact that he had been placed in jeopardy in a previous trial.[2]

The point I emphasize is, that it is not until an attempt may be made to bring these defendants to trial a second time that the plea of former jeopardy can be made. In the case at bar there is no definite showing that the State will ever endeavor to try either of these defendants on the charge for which this mistrial was declared. The result of the examination at the State Hospital, or any one of a number of subsequently occurring events, may convince the Prosecuting Attorney of the futility of further prosecution; but, at all events, former jeopardy cannot be pleaded until the State attempts a second trial; so I think the plea of former jeopardy is premature in the present state of this record. I would dismiss the present appeal of the appellants.

The Majority seeks to justify the plea of double jeopardy in the present case by quoting some, but not all, of the language in *Jones* v. *State,* 230 Ark. 18, 320

---

[1] Muse, in his confession and in his testimony, stated both he and Cody were intoxicated. Cody did not testify.

[2] For a discussion of former or double jeopardy see 15 Am. Jur. p. 38 *et seq.,* "Criminal Law" §359 *et seq.;* and see also 22 C.J.S. p. 614 *et seq.,* "Criminal Law" §238 *et seq.;* and on when the plea of former jeopardy can be made, see 22 C.J.S. p. 1244 *et seq.,* "Criminal Law" §440 *et seq.*

S. W. 2d 645. A brief review of the Jones case will show the great difference in the factual situation between that case and the case at bar. In the Jones case, Jones was placed on trial, and a mistrial declared on October 9, 1957, over Jones' opposition.[3] He did not attempt to appeal from such mistrial. Later, on April 1, 1958, when the Prosecuting Attorney called the case against Jones for setting for trial, Jones then (six months after the first trial and when he was about to be retried) pleaded former jeopardy. The Trial Court denied the plea of former jeopardy and Jones appealed from the refusal of that plea made in April 1958. We held that the refusal of the plea of former jeopardy in April 1958 was appealable, saying, as quoted in the Majority Opinion, that the plea of former jeopardy should be decided[4] before the defendant was forced into a long trial. It was in regard to the appeal in April 1958, in advance of the complete retrial, that the language was used in the Jones case which is quoted in the Majority Opinion in the case at bar. The point that I am making is that it is not until an attempt is made to bring the defendant to trial a second time that the plea of *former jeopardy* can be made.

We have an Arkansas case that sheds considerable light on the situation. It is the case of *Carson* v. *State,* 198 Ark. 102, 128 S. W. 2d 373. In that case Carson was charged with first degree murder, and when brought to trial in September 1938 he pleaded insanity, and the jury returned a verdict that he was insane at the time of the trial. The Trial Court decided that the question should not have been submitted to the jury; so the Trial Court, on its own motion, *declared a mistrial* and sent the defendant to the State Hospital for examination. Now

---

[3] The Jones opinion recites, on page 20 of the Arkansas Report: "The Court declared a mistrial on October 9, 1957; but did not rule on the jeopardy plea at that time. Then, on April 1, 1958, the following occurred in Court: . . ."

[4] This was in accordance with the general rule, as contained in 14 Am. Jur. p. 958, "Criminal Law" §382: "The better practice seems to be to try and determine a plea of former jeopardy before commencing the trial on the merits for, if the plea is sustained, the defendant goes free and there can be no trial."

notice that even after the jury brought in its verdict, the Court set the verdict aside and declared a mistrial and sent the defendant to the State Hospital. Two months later, when the hospital reported the defendant sane, the defendant was again brought to trial and he pleaded double jeopardy, and pointed out that a jury had been impanelled, a jury verdict rendered, the jury verdict set aside, the Court had declared a mistrial, and had committed the defendant. This Court said the plea of double jeopardy could not be sustained; and here is the wording of the Majority Opinion:

"It is finally argued that the court erred in refusing his plea of former jeopardy. At the first trial, the court submitted three issues: (1) Whether appellant was guilty of some degree of murder; (2) whether he was insane at the time the crime was alleged to have been committed; and (3) whether he was insane at the time of trial. The jury found him insane at the time of trial and nothing more, and thereafter the court declared a mistrial. This was not sufficient to support the plea of former jeopardy. The rule is stated in 15 Am. Jur., p. 51, as follows: 'One found by the jury to be insane at time of trial cannot plead former jeopardy when arraigned a second time on the same charge, although the jury at the same time returned a verdict of guilty which was set aside by the court.' Our statute, §3881 of Pope's Digest, is persuasive to this same effect."

In keeping with the holding of this Court in the case of *Carson* v. *State, supra,* I maintain: (a) that not only could the plea of double jeopardy not be made at the time that it was made in the case at bar; but (b) that it would not be a good plea at any time under the facts in this case. I submit the Carson case as full authority for my position.

Finally, I maintain that the Trial Court did not abuse its discretion in the case at bar in declaring the mistrial and in ordering the defendants committed to the State Hospital for examination; and I entirely dissent from that part of the Majority Opinion which says that there was no "overruling necessity."

For each and all of the reasons herein stated I respectfully but vigorously dissent from the Majority holding in the case at bar.

SAM ROBINSON, Associate Justice (concurring). This is an appeal from an order of the trial court overruling a motion made by appellants to dismiss the charge against them. Appellants alleged in the motion that they had been put in jeopardy on a previous occasion and to put them on trial again would place them in jeopardy the second time in violation of Article 2, Sec. 10 of the Constitution of the State of Arkansas.

The principle announced in *Jones* v. *State*, 230 Ark. 18, 320 S. W. 2d 645, is squarely in point with the case at bar, and is authority for the proposition that an appeal will lie from an order overruling a motion to dismiss where it is alleged in the motion that if the defendant was again put on trial it would amount to double jeopardy.

On November 17, 1962, the appellants were arrested on a charge of forgery. They were placed in the county jail and have been there since that time. On November 27, 1962, the prosecuting attorney filed in circuit court a felony information charging the defendants with forgery. They were indigent and unable to employ a lawyer. Article 2, Sec. 10 of the Constitution provides: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial . . .". Ark. Stats. 43-1203 provides that if a defendant is unable to employ counsel, it shall be the duty of the trial court to appoint a lawyer to conduct the defense.

Article 2, Sec. 8 of the Constitution provides: ". . . No person, for the same offense, shall be twice put in jeopardy of life or liberty . . .". Jeopardy attaches when a jury is sworn to try the case. In *Whitmore* v. *State*, 43 Ark. 271, the court said: "This court has, heretofore, drawn the line where jeopardy begins at the

swearing in of the jury to try the issue. And this is in accordance with the overwhelming weight of authority and with the best considered cases. If, after that, the jury is discharged without an obvious necessity and without the defendant's consent, express or implied, he cannot be again placed upon trial for the same offense, where life or liberty is involved."

In construing the double jeopardy provision of the Constitution we have held, however, as pointed out by the majority, the constitutional interdiction against double jeopardy is not applicable where a jury has been discharged because of an "overruling necessity". There does not appear to have been such a necessity in the case at bar. The same information that developed during the trial regarding the mental condition of the defendant could very easily have been obtained by the prosecution months before the case came on for trial.