John L. JONES *v.* STATE of Arkansas

CR 85-139                                                   702 S.W.2d 799

Supreme Court of Arkansas
Opinion delivered February 3, 1986
[Rehearing denied March 10, 1986.*]

---

# test

*Adair & Hance*, by: *William C. Adair*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. The question presented by this appeal is whether the trial court properly granted a mistrial, so that a retrial of the appellant does not result in double jeopardy.

Appellant, John L. Jones, was charged with obtaining and using information from the Arkansas Crime Information Center in violation of Ark. Stat. Ann. § 5-1110. The trial was set for October 30, 1984, and after the defense and prosecution had announced ready for trial a jury was selected and sworn. When the state called its first witness, Carl Stuecken, there was no response. After a brief recess the state reported that Stuecken had been admitted to the hospital for emergency surgery and was presently in intensive care. The state argued that Stuecken was a critical witness and moved for a mistrial. The defense objected, contending it was not apparent Stuecken's testimony was material. The trial judge commented that from similar cases he had already heard he regarded the testimony as material. The jury was dismissed and a conference was held with the state offering proof on the materiality of the testimony.

In January, 1985 the appellant filed a motion to dismiss the information on the grounds that to impanel another jury would subject him to double jeopardy. The motion was denied and

appellant has appealed.

Relying on language in *Cody and Muse* v. *State*, 237 Ark. 15, 371 S.W.2d 143 (1963), appellant contends the mistrial could have been averted by diligence and care on the part of the state. In *Cody and Muse*, when it appeared during the trial that insanity could become a defense for Muse, the court, over the objection of defense counsel, declared a mistrial and committed both defendants to the state hospital for observation. Muse and Cody later moved to dismiss on grounds of double jeopardy and we reversed the denial of their motion:

> The manifest necessity permitting the discharge of a jury without rendering a verdict and without justifying a plea of double jeopardy may arise from various causes or circumstances; but the circumstances must be forceful and compelling, and must be in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care.

We pointed out as far as Cody was concerned there was neither a plea of insanity nor a single line of evidence that would suggest Cody to be insane; that even if the mistrial had been justified as to Muse, there was nothing to prevent the continuation of the trial as to Cody. As to Muse, the state had possession of records for several months which should have alerted it to the sanity issue, and additionally, Muse had been held in jail for five months before an attorney had been appointed to defend him, time which might have been used in his defense.

In contrast, the facts in this case presented an emergency that could not have been averted by reasonable care. The trial was scheduled for the 30th of October and the witness, Stuecken, was subpoenaed twice, both subpoenas being served within a week prior to trial. In addition to the subpoena, the prosecuting attorney required the actual appearance of Stuecken and other witnesses at his office on Thursday, October 25. Stuecken appeared for the interview with no apparent difficulty. As Stuecken left, he was again advised by the prosecutor to be in court on the following Tuesday. He developed acute intestinal difficulties over the weekend and was admitted to the hospital on an emergency basis on Sunday night. He underwent surgery on

Monday and was in intensive care on Tuesday, the day of trial. It was only then that the prosecution learned of his unavailability, having relied on his recent observations and the subpoenas.

There was nothing in these circumstances to alert the prosecution to any likelihood of Stuecken's absence. Nor do we find that the prosecution should have exercised greater diligence in order to have discovered the absence of this witness.

The appellant's claim is one of constitutional proportion and we have considered the argument in light of United States Supreme Court cases on the subject. That court has recognized in double jeopardy claims the difficulty of categorizing cases and the inadequacy of any standard formula, to the end that each case must turn largely on its own facts. *Arizona* v. *Washington*, 434 U.S. 497 (1978); *Illinois* v. *Somerville*, 410 U.S. 458 (1973). In *Arizona* v. *Washington*, noting the importance of a defendant's right against double jeopardy and the fact that it is frustrated when a mistrial occurs, Justice Stevens wrote for the majority, "[T]he prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. . . . Thus, the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence. . . ." In the same vein, the court has also warned of the danger of error originating with the government that would lend itself to prosecutorial manipulation. *Illinois* v. *Somerville, supra.* In discussing the need for examining prosecutorial error, both *Arizona* and *Somerville* cite *Downum* v. *United States*, 372 U.S. 734 (1963). In *Downum*, material prosecution witnesses were absent at the start of trial, but the prosecution had not subpoenaed these witnesses and *knew they were unavailable* when it announced ready for trial. A mistrial was granted and the Supreme Court held that further prosecution was barred.

Here we do not find the same potential for prosecutorial manipulation as in *Downum*. The evidence demonstrates the prosecution's care in preparation for trial in combination with the unforeseeable absence of the witness. The requirement of diligence on the part of the prosecution has not been loosely applied, see *Cody, supra*, and we find it comes within the standard of strict scrutiny noted in *Arizona*. As discussed earlier, the prosecution in

this case came within that standard.

The order appealed from is affirmed.

DUDLEY, J., and NEWBERN, J., dissent.

PURTLE, J., not participating.

DAVID NEWBERN, Justice, dissenting. The question here is whether a mistrial was granted because of such "overruling" or "manifest" necessity that a retrial of this criminal defendant may be permitted despite the fact that jeopardy had attached in the first trial.

The appellant's argument on this point is based primarily on Ark. Const. art. 2, § 8, which says ". . . no person, for the same offense, shall be twice put in jeopardy of life or liberty. . . ." He also cites the similar provision, found in the Fifth Amendment to the U. S. Constitution, against placing "life or limb" in jeopardy a second time for the same offense. The latter applies to the states through the Fourteenth Amendment. *Benton* v. *Maryland*, 395 U.S. 784 (1969).

The Arkansas Constitution provision has been interpreted as requiring that there be "overruling necessity" for a mistrial in a criminal case in order to permit a second trial over the objection of former jeopardy. In *Jones* v. *State*, 230 Ark. 18, 320 S.W.2d 645 (1959), it was discovered, mid-trial, that a juror was related to a policeman who had testified. A mistrial was declared. The accused was to be retried over his plea of former jeopardy, and this court held he could not be retried. We said, in summary of a number of cases reviewed in the opinion:

> In each of the above discussed cases there was a real reason — i.e. "overruling necessity" — to discharge the jury; and we held that the rule against double jeopardy had not been violated in those cases. But, in the case at bar, there was no sound reason for discharging the jury, and there was certainly no "overruling necessity." The relationship of a juror to a witness in the trial does not per se disqualify the juror. *Arnold* v. *State*, 150 Ark. 27, 233 S.W. 818. Officer Campbell's testimony was practically the same as that of Officer Dodd's; and Officer Campbell's testimony did not directly relate to the facts of the

homicide. Furthermore, the defendant was perfectly willing to have Mrs. Ensminger as a juror, and so informed the Court. We can see no good reason for declaring a mistrial after the mention of jeopardy, and after the accused had urged the Court to continue the trial. So, the effect of the trial of October 8th was to put the accused in jeopardy; and his motion of April 1, 1958, to be discharged because of former jeopardy, should have been granted. [230 Ark. at 23; 320 S.W.2d at 648.]

The point is that it was not shown that the trial could not have proceeded regardless of the juror's relationship with the witness. The state was held not to have borne its burden.

In *Cody and Muse* v. *State*, 237 Ark. 15, 371 S.W.2d 143 (1963), the judge determined, mid-trial, that one of the defendants should be given the benefit of a possible insanity defense. A mistrial was declared to send both defendants to the state hospital for examination. We again held there was not sufficient overruling necessity for a mistrial to overcome a subsequent plea of former jeopardy. There, apparently adopting language from a legal encyclopedia, we said:

> . . .[T]he court may declare a mistrial when the issue of insanity suddenly enters the case, *provided* that the circumstances are compelling or give rise to an emergency over which neither court nor attorney could have any control or which *could not have been averted by diligence and care.* [237 Ark. at 21; 371 S.W.2d at 147, emphasis in the original.]

That language means that there is overruling necessity if there are compelling circumstances which could not have been avoided by diligence on the part of the judge or the party moving for the mistrial. It imposes two burdens on the state in this case. The state must show that there were strong reasons for not going to trial and that it was not at fault. The state has failed to prove either.

The appellant's argument is that the mistrial was declared with no showing that the absent witness' testimony was necessary to the state's case. He was correct. Here is the record:

> MR. ISBELL: Your Honor, comes now the State of Arkansas and moves this Court for the unique and unusual

remedy of a mistrial. That the State's first witness, Mr. Carl Stuecken has been admitted to the Baxter General Hospital for emergency surgery, is presently in intensive care. In conversation with the doctor's secretary, through the doctors, he is in critical condition. He is not expected to be available, out of intensive care for the next two weeks, due to the nature of the surgery and his present condition.

The State submits that Mr. Stuecken is a critical witness and that everything that flows from his testimony and were he not here, that the State's case would be emasculated under the hearsay rule because Mr. Stuecken's testimony lays a foundation for the entire prosecution of Mr. Jones.

Therefore, the State moves for the extraordinary remedy of mistrial at this point in time.

MR. ADAIR: The defense would respond that from the discovery it would not appear that Mr. Stuecken's testimony was material. That other witnesses are available who have access to the alleged material that Mr. Jones is alleged to have wrongfully obtained, information wrongfully obtained from the computers and that the persons apparently to whom the information was allegedly given are presently in the courtroom. Therefore, this witness is not a material witness and the motion for mistrial should be denied.

THE COURT: The motion for mistrial will be granted.

MR. ADAIR: I would like for the Judge to reconsider his ruling. Without a proffer of proof, what this witness would testify to, to see if in fact he is material.

THE COURT: I would like to go ahead and dismiss the jury before the proffer.

MR. ADAIR: I would like for the Judge to reconsider his ruling after the proffer of proof. In other words, what he may proffer may show he is not a material witness.

THE COURT: The reason the Court is not inquiring in any more detail, I have already heard a couple of these

cases arising at, or around about this same time and I have already heard Mr. Stuecken testify in at least one previous trial.

MR. ADAIR: He must be material to the charges filed herein.

THE COURT: We will have further discussion after the jury is dismissed.

The judge's statement that he had heard Mr. Stuecken testify in previous cases hardly justifies the granting of the mistrial here. We cannot assume automatically, nor should the judge have assumed, that Stuecken's testimony was to be the same in this case as in the other cases the judge had tried, even if we knew what his testimony had been.

The prosecutor, after the mistrial had been granted, made a proffer with respect to the materiality and necessity of Stuecken's testimony. Even if the proffer was otherwise sufficient, it was obviously untimely and did not inform the judge's decision.

Even if we were to hold, as the majority opinion suggests we should, that the entire emphasis should be on the diligence of the prosecutor, ignoring the question of "overruling necessity," I would find the prosecutor had no excuse for not having his witnesses called to be sure they were there prior to announcing ready for trial and allowing the jury to be empanelled and jeopardy to attach. Particularly, he should have assured the presence of his very first and, according to him, most crucial witness.

If indeed there is a difference between the effects of the Arkansas and United States constitutional double jeopardy provisions, our protection of this individual right may exceed that found in the U. S. Supreme Court cases, *see, e.g., State of Anderson*, 286 Ark. 58, 688 S.W.2d 947 (1985), but of course we may not offer less protection than is afforded by the United States Constitution as the U.S. Supreme Court interprets it.

The Supreme Court's cases show clearly that the test of "manifest necessity" has not been satisfied here. In *Arizona* v. *Washington*, 434 U.S. 497 (1978), cited by the majority opinion, defense counsel had made prejudicially improper remarks in his

opening statement to the jury. The trial judge declared a mistrial but did not make a specific finding that "manifest necessity" required it. The question before the Supreme Court was whether the record demonstrated what Mr. Justice Stevens' excellent opinion referred to as a "high degree" of necessity for the mistrial and whether the trial judge had acted precipitately in granting it. Upholding the trial judge's exercise of discretion, and thus refusing to bar a second trial, Mr. Justice Stevens, for the court said:

> Our conclusion that a trial judge's decision to declare a mistrial based on his assessment of the prejudicial impact of improper argument is entitled to great deference does not, of course, end the inquiry. As noted earlier, a constitutionally protected interest is inevitably affected by any mistrial decision. The trial judge, therefore, "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States* v. *Jorn*, 400 U.S. at 486 (Harlan, J.). In order to ensure that this interest is adequately protected, reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised "sound discretion" in declaring a mistrial.

> Thus, if a trial judge acts irrationally or irresponsibly, *cf. United States* v. *Jorn, supra*; see *Illinois* v. *Somerville*, 410 U.S. at 469, his action cannot be condoned. But our review of this record indicates that this was not such a case. Defense counsel aired improper and highly prejudicial evidence before the jury, the possible impact of which the trial judge was in the best position to assess. The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. We are therefore persuaded by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's

interest in having the trial concluded in a single proceeding. Since he exercised "sound discretion" in handling the sensitive problem of possible juror bias created by the improper comment of defense counsel, the mistrial order is supported by the "high degree" of necessity which is required in a case of this kind. Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, "the public's interest in fair trials designed to end in just judgments must prevail over the defendant's valued right" to have his trial concluded before the first jury impaneled.

[434 U.S. at 514-516, footnotes omitted.]

That case, where the remarks occurred in the presence of the court and the record was fully developed before the motion was granted, stands in stark contrast to the record in this case which has been quoted above.

In *Illinois* v. *Somerville*, 410 U.S. 458 (1973), relied on heavily by the majority opinion, Mr. Justice Rehnquist, writing for the court, found "manifest necessity" where a defective indictment was noticed by the prosecutor mid-trial and a mistrial was declared. He pointed out that it would have been foolish to have permitted the trial to reach a conclusion only to be reversed later because of the fatally flawed indictment. That, of course, makes an assumption Mr. Justice Rehnquist does not state, *i.e.*, that the accused would necessarily have been convicted in the first trial. But even if the logic in that position could be followed, the opinion notes its distinguishability from *Downum* v. *United States*, 372 U.S. 734 (1965), which is the only case cited by the majority opinion in the case before us now in which the necessity for a mistrial was found by the trial judge to result from absence of witnesses. Mr. Justice Rehnquist said:

This situation is thus unlike *Downum*, where the mistrial entailed not only a delay for the defendant, but also operated as a post-jeopardy continuance to allow the prosecution to strengthen its case. [410 U.S. at 469]

Again, the majority opinion in the case before us now emphasizes that in *Downum* v. *United States*, *supra*, the prosecution proceeded to trial though it knew the witnesses were unavailable and

had not subpoenaed them. This makes it seem that the emphasis in *Downum* v. *United States, supra*, was on the unpreparedness of the prosecution. That ignores the fact that the court pointed out that the absent witnesses' testimony was essential only for two of six counts against the defendant, a fact surely considered in determining whether necessity for mistrial as to all six counts was appropriate.

In *Downum* v. *United States, supra*, Mr. Justice Douglas made it clear that each case must turn on its own facts, and not every case in which a mistrial is granted for failure of a witness to appear should result in a successful plea of former jeopardy. However, given the record here of refusal of the trial court even to hear evidence or argument on the question of the necessity of granting a mistrial before granting it, I find the U. S. constitutional former jeopardy provision applies.

The Arkansas and U. S. constitutions thus both should be held to bar a retrial of this defendant. The prosecution should be dismissed.

Therefore, I respectfully dissent.

DUDLEY, J. joins in this dissent.